UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COUNTY CREDIT UNION,<br><br>Plaintiff,<br><br>v.<br><br>CITIZENS EQUITY FIRST CREDIT UNION,<br><br>Defendant. | Case No.: 18cv967-GPC(RBB)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DIMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>**[Dkt. No. 29.]** |

Before the Court is Defendant's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (Dkt. No. 29.) Plaintiff filed an opposition on July 13, 2018. (Dkt. No. 32.) Defendant filed a reply on July 27, 2018. (Dkt. No. 38.) Based on the reasoning below, the Court DENIES Defendant's motion to dismiss.

## Background

On May 16, 2018, Plaintiff San Diego County Credit Union ("SDCCU") filed a complaint against Defendant Citizens Equity First Credit Union ("CEFCU") for declaratory judgment of non-infringement and invalidity of trademarks and related

1

claims. (Dkt. No. 1, Compl.) SDCCU and CEFCU are both large credit unions. (Id. ¶ 2.) SDCCU's customers are primarily located in Southern California while CEFCU's customers are primarily located in Peoria, Illinois and northern California. (Id.)

CEFCU is a credit union organized and existing under Illinois law and has its principal place of business in Peoria, Illinois. (Dkt. No. 29-4, Schneider Decl. ¶ 2.) CEFCU's chief officers and senior vice presidents are based in Illinois. (Dkt. No. 37, Flexor Decl. ¶ 2.) In 2008 or 2009, CEFCU bought California-based Valley Credit Union which had three branches. (Dkt. No. 29-3, Dabney Decl., Ex. 16, Flexor Depo. at 29:9-11; Dkt. No. 37, Flexor Decl. ¶ 6.) It re-branded the three Valley Credit Union branches under CEFCU and added two additional California branches in 2016 and 2017. (Dkt. No. 29-3, Dabney Decl., Ex. 16, Flexor Depo. at 33:13-17; Dkt. No. 32-13, Salen Decl., Ex. 11; Dkt. No. 32-14, Salen Decl., Ex. 12.) On January 14, 2013, CEFCU registered an agent for service of process in California. (Dkt. No. 32-7, Salen Decl., Ex. 5.) As of March 31, 2018, CEFCU has 812 employees in Illinois and 77 in California. (Dkt. No. 37, Flexor Decl. ¶ 3.) It maintains twenty-two branch locations in Illinois and has five branches in northern California. (Id. ¶¶ 4, 6.) It has members in all fifty states. (Id. ¶ 7.) As of March 31, 2018, CEFCU's California members account for about 7.18% of CEFCU's total deposits and 7.46% of CEFCU's total loans. (Id. ¶ 11.) About 9.31% of CEFCU members have California addresses. (Id. ¶¶ 8, 10.)

SDCCU owns over 40 federally registered trademarks in connection with its credit union services, including U.S. Trademark Registration No. 4,560,596 for "IT'S NOT BIG BANK BANKING. IT'S BETTER" (the "SDCCU Mark") issued on July 1, 2014. (Dkt. No. 1, Compl. ¶ 25.) CEFCU owns U.S. Trademark Registration No. 3,952,993 for "CEFCU. NOT A BANK. BETTER" (the "CEFCU Mark") issued on May 3, 2011. (Id. ¶ 33.) Several third-party credit unions use the following trademarks, "NOT A BANK –

BETTER!", "BETTER THAN A BANK", AND "IT'S NOT A BANK" ("Third Party marks"). (Id. ¶ 3.)

After a CEFCU employee saw a billboard in San Diego, CA of the SDCCU Mark used to market credit union services, CEFCU filed a petition for cancellation of the SDCCU Mark with the U.S. Patent and Trademark Office's ("USPTO") Trademark Trial and Appeal Board ("TTAB") claiming the SDCCU Mark is likely to cause confusion or to cause mistake or to deceive consumers when viewing CEFCU's Mark. (Id. ¶ 5.)

The petition for cancellation of the '596 Trademark Registration No. was filed on May 17, 2017 and entitled Citizens Equity First Credit Union v. San Diego County Credit Union, Cancellation No. 92066165. (Dkt. No. 29-3, Dabney Decl., Ex. 1.) On July 3, 2017, SDCCU filed an Answer and Counterclaim in the cancellation proceeding. (Id.; Ex. 3.) On August 7, 2017, CEFCU filed an Answer to the Counterclaim. (Id., Ex. 4.) On August 28, 2017, SDCCU filed an Amended Counterclaim to which CEFCU timely answered on September 11, 2017. (Id., Exs. 5. 6.) A scheduling order was issued and discovery has taken place. (Id., Ex. 7.) On March 23, 2018, CEFCU filed a motion for leave to amend its petition to add an additional ground for cancellation. (Id., Ex. 17.) Then on May 16, 2018, SDCCU filed this action and moved the PTO for a stay of the cancellation proceedings which the PTO granted on June 8, 2018. (Id.; Exs. 1, 23, 24.)

In this action, the complaint alleges that the CEFCU Mark is, in fact, more similar to each of the Third Party Marks than it is to the SDCCU Mark. (Dkt. No. 1, Compl. ¶ 7.) Therefore, if CEFCU believes that the scope of protection for its mark is broad enough to encompass the SDCCU, CEFCU materially misrepresented to the USPTO that the CEFCU Mark was not confusingly similar to any of the Third-Party Marks. (Id.) On the other hand, if CEFCU believes that its mark was not confusingly similar to any of the Third-Party marks, the CEFCU Mark cannot be broad enough to encompass the SDCCU Mark. (Id.) In either case, CEFCU's cancellation action and threat of lawsuit are

objectively baseless and brought with the subjective intent to harm SDCCU. (Id.) SDCCU also has a reasonable apprehension that CEFCU will file a lawsuit against SDCCU alleging trademark infringement. (Id. ¶ 47.)

The complaint alleges eight causes of action seeking declaratory judgment of non-infringement and invalidity of trademarks, false or fraudulent trademark registration under 15 U.S.C. § 1120, unfair competition under 15 U.S.C. § 1125, unfair competition under California Business & Professions Code section 17200 *et seq*. and unfair competition under common law. (Id. ¶¶ 58-109.)

## Discussion

### A. Legal Standard on Personal Jurisdiction

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." In re Western States Wholesale Natural Gas Antitrust Litig. v. Oneok, Inc., 715 F.3d 716, 741 (9th Cir. 2013). If the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Bryton Purcell LLP v. Recordon & Recordon, 575 F.3d 981, 985 (9th Cir. 2009). On a prima facie showing, the court resolves all contested facts in favor of the non-moving party. In re Western States, 715 F.3d at 741; AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996) (if conflicted facts are contained in the parties' affidavits, the facts must be resolved in favor of the plaintiff for purposes of determining whether a prima facie case of personal jurisdiction has been established.) At the same time, however, the plaintiff cannot establish jurisdiction by alleging bare jurisdictionally-triggering facts without providing some evidence of their existence. Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." Marvix Photo, Inc. v. Brand

Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (citations omitted). California's long-arm statute is "coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court." Republic Int'l Corp. v. Amco Eng'rs, Inc., 516 F.2d 161, 167 (9th Cir. 1976) (quoting Threlkeld v. Tucker, 496 F.2d 1101, 1103 (9th Cir. 1974)). As such, the Court need only consider the requirements of due process. Due process requires that nonresident defendants have "minimum contact" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Personal jurisdiction can be either "general" or "specific." See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

## B. General Personal Jurisdiction over Defendant

Defendant argues the Court does not have general personal jurisdiction over it because its branch offices and members in California are not so substantial to render it at home in California. SDCCU responds that CEFCU's growing and significant contacts since its acquisition and rebranding of Valley Credit Union in California and subsequent aggressive marketing of its brand in California subjects it to general personal jurisdiction by the Court.

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). As to corporations, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction." Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (citation omitted). Outside of these paradigm bases, only "in an exceptional case" should a court find a corporation's operations in the forum to be "so

substantial and of such a nature as to render the corporation at home in that State." Id. at 139 n.19. Exceptional circumstances, as noted in Daimler, do not exist merely whenever "a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is only whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" Id. at 139 (quoting Goodyear, 564 U.S. at 919.) The Supreme Court in Daimler AG cited to its decision in Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437 (1952) to exemplify what constitutes "exceptional circumstances." Id. There, the Court held that an Ohio court could exert general jurisdiction over an out-of-state corporation located in the Philippines, because Ohio was the corporations' principal, albeit temporary, place of business during the war when the Japanese occupied the Philippines. Id. at 447-48.

The Ninth Circuit has noted the "demanding nature of the standard for general personal jurisdiction over a corporation." Martinez v. Aero Caribbean, 764 F.3d 1062, 1070 (9th Cir. 2014). The Daimler court rejected the argument that a court has general jurisdiction over a corporation when it "engages in a substantial, continuous, and systematic course of business" in a state. 571 U.S. at 138; see Kipp v. Ski Enter. Corp. of Wisconsin, 783 F.3d 695, 698 (7th Cir. 2015) ("Daimler raised the bar for general jurisdiction and "require[s] more than the 'substantial, continuous, and systematic course of business' that was once thought to suffice."); Amiri v. DynCorp Int'l, Inc., Case No. 14cv3333 SC, 2015 WL 166910, at *3 (N.D. Cal. Jan. 13, 2015) (noting that "in the overwhelming majority of cases there will be no occasion to explore whether a Perkins-type exception might apply").

The general jurisdiction inquiry does not "focus solely on the magnitude of the defendant's in-state contacts" but must take into account a "corporation's activities in their entirety, nationwide and worldwide." Daimler, 571 U.S. at 139 n. 20. Therefore, any general jurisdiction analysis must involve a comparative assessment of the

defendant's business activities. Lindora, LLC v. Isagenix Int'l, LLC, 198 F. Supp. 3d 1127, 1137 (S.D. Cal. 2016) (no general jurisdiction where the plaintiff failed to make a comparative assessment and instead solely focused on the defendant's extensive contacts in California). "If the magnitude of a corporation's business activities in the forum state substantially exceeds the magnitude of the corporation's activities in other places, general jurisdiction may be appropriate in the forum state." Id.

The Ninth Circuit has also held that designating a local agent for service of process, by itself, does not constitute consent to personal jurisdiction. Martinez, 764 F.3d at 1067-69; King v. American Family Mut. Ins. Co., 632 F.3d 570, 572 (9th Cir. 2011) (appointing agent for service of process does not subject a defendant to either general or specific personal jurisdiction). In addition, generating substantial revenue also does not confer general personal jurisdiction. See Daimler, 571 U.S. at 158 (dissent noting that the majority held Daimler AG, the German manufacturer of Mercedes–Benz automobiles, was not subject to general jurisdiction in California "despite its multiple offices, continuous operations, and billions of dollars' worth of sales there."); Martinez, 764 F.3d at 1070 (affirming finding of no general jurisdiction where defendant entered into five contracts with California corporations, one of which was "worth between $225 and $450 million" but had no physical presence or offices).

SDCCU argues that the following contacts make CEFCU "at home" in California. CEFCU registered an agent for service of process in California. California and Illinois are the only residents that qualify to be members and shareholders of CEFCU. CEFCU markets aggressively to California residents through television, radio and newspaper advertisements. It also acquired the naming rights to San Jose State University's football stadium, now named CEFCU Stadium, for a period of 15 years for $8.7 million. CEFCU also conducted focus group research in California to grow awareness of its brand. CEFCU's website allows California residents to open accounts, access accounts and

7

perform other banking operations.  In its 2017 annual report, CEFCU boasted that its California market saw record growth in their book-of-business of over $52 million and consumer/mortgage and business loan volume of more than $108 million.  (See Dkt. No. 32-6, Salen Decl., Ex. 4.)

The Court does not find SDCCU's reasons of substantial and continuous conduct to support that these contacts make it "at home" in California.  As noted in Daimler, general jurisdiction requires a comparative analysis of the entirety of CEFCU's contacts, "nationwide and worldwide."  Daimler, 571 U.S. at 139 n. 20; see Brown v. Lockheed Martin Corp., 814 F.3d 619, 629 (2d Cir. 2016) (Daimler requires a court to assess "the company's local activity not in isolation, but in the context of the company's overall activity"); Martinez, 764 F.3d at 1070 (quoting Daimler, 571 U.S. at 139 n. 20); Ranza v. Nike, Inc., 793 F.3d 1059, 1070 (9th Cir. 2015).  Plaintiff has not conducted an assessment of CEFCU's contact in their entirety but focuses solely on its activities in California.  Plaintiff asserts that California is the only state, besides Illinois, in which residents qualify to be members and shareholders.  However, the record demonstrates that other qualifications allow a person to become a member of CEFCU.  (See Dkt. No. 32-10, Salen Decl., Ex. 8.)  Furthermore, CEFCU has members in all fifty states.  (Dkt. No. 37, Flexor Decl. ¶ 7.)  In fact, the number of members that reside outside of California or Illinois exceed the number of members in California.  (See Dkt. No. 37, Flexor Decl. ¶¶ 8-10 (under seal).)  Thus, Plaintiff has not demonstrated that Defendant's substantial and continuous conduct renders it "home" in California and the Court does not have general jurisdiction over Defendant.[1]  See Lindora, LLC, 198 F. Supp. 3d at 1137.

---

[1] Plaintiff also argues that the exercise of general jurisdiction would be "reasonable".  However, the Court in Daimler clarified that the reasonableness test articulated in Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty., 480 U.S. 102, 113-16 (1987), "is reserved for the specific jurisdiction inquiry and plays no role in the general jurisdiction inquiry."  Ranza v. Nike, Inc., 793 F.3d 1059, 1070

8

**B.      Specific Personal Jurisdiction over Defendant**

Defendant next argues that this Court lacks specific jurisdiction over it because the claims asserted in the complaint arise from CEFCU's filings with the PTO in Virginia and those filings, which form the basis of this case, were not purposely directed at California.  In response, Plaintiff contends that this Court may assert specific personal jurisdiction over Defendant because it purposely directed its activities to this forum as the underlying basis of the complaint arises from CEFCU's expansion into the California market.

Specific jurisdiction exists when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum."  Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414 n. 8.  The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation."  Walden v. Riore, 134 S. Ct. 1115, 1121 (2014).  Specific jurisdiction is limited to ruling on "issues deriving from, or connected with, the very controversy that establishes jurisdiction."  Goodyear Dunlop Tires, 131 S. Ct. at 2851 (citation omitted).  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the States."  Bristol-Myers Squibb Co. v. Superior Ct. of California, 137 S. Ct. 1771, 1781 (2017).

The Ninth Circuit conducts a three-prong test to determine whether a non-resident defendant is subject to specific personal jurisdiction,

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or

---

n.3 (9th Cir. 2015) (citing Daimler, 571 U.S. at 139 n. 20).  Therefore, the Court declines to address Plaintiff's analysis of "reasonableness" under the general jurisdiction analysis.

9

relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)).

### a. Purposeful Direction

The Ninth Circuit applies the three part purposeful direction test enunciated in Calder v. Jones for trademark infringement actions. See Nissan Motor Co. v. Nissan Computer Corp., 246 F.3d 675, 675 (9th Cir. 2000); see also Adobe Sys. Inc. v. Blue Source Grp., Inc., 125 F. Supp. 3d 945, 960 (N.D. Cal. 2015) (Ninth Circuit requires a showing of purposeful direction to trademark infringement analysis). Under the three-part Calder "effects" test to evaluate purposeful direction, Plaintiff must establish that the defendant allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing Calder v. Jones, 465 U.S. 783 (1984)).

### 1. Intentional Act

An intentional act for purposes of the effects test is "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." Wash. Shoe Co. v. A–Z Sporting Goods, Inc., 704 F.3d 668, 674 (9th Cir. 2012); Schwarzenegger, 374 F.3d at 806 (an intentional act "refers" to an intent to perform an actual, physical act in the real world."). The fact that "a foreign act" has a foreseeable effect in the forum state is insufficient to give rise to specific jurisdiction. Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000). In Axiom, the Ninth Circuit held that adding a copyrighted logo to a

newsletter and sending it to a list of recipients was an intentional act under Calder. Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1069 (9th Cir. 2017).

Defendant does not address the intentional act factor but focuses primarily on the expressly aiming factor. In opposition, SDCCU responds that the intentional acts of CEFCU consist of its purchase of California based Valley Credit Union in 2008, rebranding all Valley Credit Union branches with the CEFCU name, adding two branches in California and aggressively marketing its services using its purported trademarks at issue in this case in California since at least as early as June 2011. SDCCU also argues that serving it with the proposed amended cancellation petition alleging that SDCCU Mark resembles CEFCU's common law service in this district is an intentional act.

It can be argued that CEFCU committed an intentional act by filing a petition for cancellation in Virginia but CEFCU also committed intentional acts by acquiring three branches of California's Valley Credit Union in 2008, rebranding them as CEFCU, adding two branches in California and marketing its services by using the purported trademarks. These are sufficient to meet the first Calder factor.

### 2. Expressly Aiming

Next, the "express aiming" inquiry requires "something more" than "a foreign act with foreseeable effects in the forum state." Bancroft & Masters, Inc., 223 F.3d at 1087. The Court must focus on the "defendant's 'own contacts' with the forum, not . . . the defendant's knowledge of a plaintiff's connections to a forum." Axiom Foods, 874 at 1070 (quoting Walden, 134 S. Ct. at 1124-25). In Walden, the United States Supreme Court rejected Ninth Circuit precedent that a defendant's knowledge that a plaintiff has strong forum connections and foreseeable harm that the plaintiff suffered in the forum were sufficient to satisfy minimum contacts. Axiom Foods, Inc., 874 F.3d at 1069-70 (citing Walden, 134 S. Ct. at 1124-25). "Walden requires more." Id. at 1069. Walden

made clear that courts "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." Id. at 1070.

"Two principles animate the 'defendant-focused' inquiry." Axiom, 874 F.3d at 1068 (citing Walden, 134 S. Ct. at 1122). "First, the relationship between the nonresident defendant, the forum, and the litigation 'must arise out of contacts that the 'defendant himself' creates with the forum State.'" Id. "Second, the minimum contacts analysis examines 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" Id. "It follows that 'a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" Id.

CEFCU argues that its challenged PTO filing is not purposefully directed at California. The cancellation petition involve rights to geographically unrestricted federal registration of service marks and involves rights to registration which are separate and distinct from rights to use that might be implicated by a civil action for alleged infringement. In response, Plaintiff contends that CEFCU purchased California-based Valley Credit Union in California in 2008, renamed them all with the CEFCU name, added two additional branches in California and aggressively marketed its services using its purported trademarks since at least June 2011. Plaintiff further argues that CEFCU's assertion of trademark rights is based on SDCCU's use of its trademark in California which is the only state where both market their credit union services.

In the instant complaint, SDCCU challenges assertions made by CEFCU in its cancellation proceeding before the TTAB which was filed in Virginia. However, the facts and impetus underlying the cancellation proceeding, and consequently this proceeding, arise out of CEFCU's contacts in California. These include acquiring California-based Valley Credit Union and rebranding them as CEFCU, increasing its presence by adding two additional branches, and aggressively marketing its services

using its trademark in California. The petition for cancellation asserts that SDCCU's mark will likely cause confusion, mistake or deceive under the trademark laws. SDCCU's mark is in use only in southern California and its use in California will likely cause confusion or mistake. Because of CEFCU's expansion into the California market, one of CEFCU's employees saw the SDCCU Mark in southern California which prompted the filing of the cancellation petition. CEFCU's contacts in California form the basis of SDCCU's reasonable concern that CEFCU would file suit for infringing its federally registered and common law trademark. The declaratory relief claims arise from CEFCU's expansion of its credit union into California. See e.g., Picot v. Weston, 780 F.3d 1206, 1213 (9th Cir. 2015) (visits to California were incidental to and did not form the basis of the causes of action in the complaint and did not create sufficient minimum contacts).

The Court finds CEFCU's cases cited in support are inapposite. In Delphix Corpo. v. Embarcadero Techs., Inc., Case No. 16cv606-BLF, 2016 WL 4474631 (N.D. Cal. Aug. 25, 2016), the court held there was no specific jurisdiction over cancellation proceedings before the TTAB because the defendant did not expressly aim its conduct at the forum. Id. at *9. The plaintiff was incorporated in Delaware with its principal place of business in California and the defendant was a Delaware corporation that was founded in California and was later acquired by a Texas-based company. Id. at *1. The court held, citing Walden, that any contact by the defendant with the plaintiff due to the cancellation proceeding such as retaining California counsel for the TTAB action, conducting discovery and attending two in-person settlement meetings in California did not support the expressly aimed factor. Id. at *8. There were no other contacts by the defendant directed to the plaintiff in California.

In Allergan, Inc. v. Dermavita Ltd. P'ship, Dima Corp. S.A., Case No. SACV 17-00619-CJC(DFMx), 2018 WL 1406913 (C.D. Cal. Jan. 3, 2018), a trademark

infringement case, the defendant was a Lebanon-based company with no employees, offices or distributors in California or the United States and did not manufacture, market, distribute or sell products in California or the United States. Id. at 1. The court held that the intentional acts of contracting with a third party that gave the defendant the right to market its products throughout the entire world, including the United States, its authorization to create a mobile application and its filing of trademark applications and petitions to cancel the plaintiff's trademarks were not expressly aimed at California or the United States. Id. at *3. The court explained that the contracts or mobile application did not authorize a sale to the United States and no sale was made or could have been made to the United States. Id. The actions amount to "untargeted negligence" and did not meet the "express aiming" requirement. Id. Moreover, the court noted that the defendant's filing of trademark applications and petitions to cancel the plaintiff's trademarks are not sufficient to justify haling a foreign into federal court. Id. at *4.

Contrary to Allergan, and Delphix Corp. where the defendants did not expressly aim their conduct at California, in this case, CEFCU's intentional acts underlying the cancellation petition were directed at California are more significant and substantial. The Court concludes that SDCCU's declaratory judgment complaint, seeking a declaration that CEFCU's trademarks are invalid and not infringed, based on the petition for cancellation directly relate to CEFCU's contacts in California. Accordingly the "expressly aiming" factor is met.

### 3. Causing Harm

Lastly, under Calder, the third factor requires the plaintiff to show that the defendant "caused harm that the defendant knows is likely to be suffered in the forum state." See Schwarzenegger, 374 F.3d at 802. Here, the intentional acts of CEFCU expressly aiming its conduct at California will likely cause harm to SDCCU in California. This factor is met.

### b. Arising Out of

As to the second factor, the Court considers whether SDCCU's claims arise out of CEFCU's forum-related activities. See id. The Ninth Circuit applies the "but for" test to determine the "arising out of" requirement. Gray & Co. v. Firstenberg Mach. Co., 913 F.2d 758, 761 (9th Cir. 1990) (internal citation omitted). A "plaintiff must show that 'but for' the defendant's forum-related conduct, the injury would not have occurred." Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1053 (N.D. Cal. 2010) (citing Myers v. Bennett Law Offices, 238 F.3d 1068, 1075 (9th Cir. 2001)).

CEFCU argues that SDCCU's claimed injuries arise out of CEFCU's challenged PTO filings in Virginia and not based on any acts it committed in California. The fact that a CEFCU employee saw the SDCCU mark on a billboard is not relevant to specific jurisdiction because none of SDCCU's purported claims arise from the person seeing a billboard and CEFCU's discovery of the SDCCU Mark in California does not involve any interaction between CEFCU and SCDCCU. SDCCU rebuts CEFCU's argument by asserting that if CEFCU had not actively spent the last seven years growing its California based credit union business and its brand in California, discovered the SDCCU Mark on a billboard in San Diego, served a Cancellation Petition and proposed amendment on SDCCU in this district based on such discovery and alleged a likelihood of confusion based on the use of the respective marks in California, SDCCU would not have developed a reasonable fear of being sued in this state or be required to defend itself in this case.

The Court agrees with Plaintiff that SDCCU's claims arise out of CEFCU's contacts with California. The impetus of CEFCU's cancellation petition was a result of its expansion of its credit union services from Illinois to northern California. Because of its increasing presence in California, including when a CEFCU employee saw SDCCU's billboard in San Diego, such presence prompted CEFCU to pursue the cancellation

petition in Virginia, But for CEFCU's expansion into the northern California credit union market and subsequent filing of a cancellation petition, the declaratory action would not have been filed. Thus, SDCCU's claims "arises out of or relates to [CEFCU's] forum-related activities." See Schwarzenegger, 374 F.3d at 802.

### c. Reasonableness

Once the plaintiff has met the first two factors, the defendant bears the burden of overcoming a presumption that jurisdiction is reasonable by presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). For jurisdiction to be reasonable, it must comport with "fair play and substantial justice." Burger King Corp., 471 U.S. at 476.

The reasonableness inquiry encompasses factors including (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1352 (9th Cir. 2003).

Because SDCCU has demonstrated purposeful direction that arises out CEFCU's forum-related activities, it is CEFCU's burden to demonstrate a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." See Burger King, 471 U.S. at 477. CEFCU's has not addressed the reasonableness factors raised by SDCCU in its opposition.[2]

---

[2] While the Court noted that the reasonableness has no relevance under an analysis of general jurisdiction, it is relevant to specific jurisdiction and the Court looks at the reasonableness arguments raised by SDCCU concerning general jurisdiction for purposes of specific jurisdiction.

First, litigation in California will not significantly burden CEFCU as it conducts business in California and has many employees here. California has a strong interest in protecting its citizens from trademark infringement and consumer confusion between two entities operating in California. SDCCU has an interest in obtaining full relief in this Court because relief in the TTAB cancellation proceedings is limited. Fourth, California is the most efficient forum for judicial resolution as this case will resolve all issues while the TTAB is limited to deciding matters relating to registration. Lastly, California has a strong interest in furthering substantive social policies as CECFU seeks to protect its California operations and consumers from SDCCU's alleged infringement and SDCCU filed this case to protect itself and its California consumers. Accordingly, the Court concludes that the exercise of personal jurisdiction is reasonable.

In sum, the three factors have been met and the Court finds it has personal jurisdiction over Defendant.

## Conclusion

Based the above, the Court DENIES Defendant's motion for lack of personal jurisdiction. The hearing set on August 10, 2018 shall be **vacated.**

IT IS SO ORDERED.

Dated: July 31, 2018

Hon. Gonzalo P. Curiel
United States District Judge

17
18cv967-GPC(RBB)