UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COUNTY CREDIT UNION,<br><br>                              Plaintiff,<br><br>v.<br><br>CITIZENS EQUITY FIRST CREDIT UNION,<br><br>                              Defendant. | Case No.:  18cv967-GPC(RBB)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DIMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND GRANTING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM WITH LEAVE TO AMEND**<br><br>**[Dkt. No. 40.]** |

Before the Court is Defendant's motion to dismiss for lack subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 40.)  Plaintiff filed an opposition on August 31, 2018.  (Dkt. No. 42.)  Defendant filed a reply on September 14, 2018.  (Dkt. No. 45.)  Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument.  Based on the reasoning below, the Court

DENIES Defendant's motion to dismiss for lack of subject matter jurisdiction and GRANTS Defendant's motion to dismiss for failure to state a claim with leave to amend.

## Background

On May 16, 2018, Plaintiff San Diego County Credit Union ("SDCCU") filed a complaint against Defendant Citizens Equity First Credit Union ("CEFCU") for declaratory judgment of non-infringement and invalidity of trademarks and related claims. (Dkt. No. 1, Compl.) SDCCU owns over 40 federally registered trademarks in connection with its credit union services, including U.S. Trademark Registration No. 4,560,596 for "IT'S NOT BIG BANK BANKING. IT'S BETTER" (the "SDCCU Mark") which issued on July 1, 2014. (Dkt. No. 1, Compl. ¶ 25; Dkt. No. 1-2, Compl., Ex. A.) CEFCU owns U.S. Trademark Registration No. 3,952,993 for "CEFCU. NOT A BANK. BETTER" (the "CEFCU Mark") which issued on May 3, 2011. (Dkt. No. 1, Compl. ¶ 33; Dkt. No. 1-3, Compl., Ex. B.) Prior to filing the trademark application for the CEFCU Mark, CEFCU conducted a trademark search report and, on information and belief, learned that several third-party credit unions already used trademarks similar to the CEFCU Mark such as "NOT A BANK – BETTER!", "BETTER THAN A BANK", and "IT'S NOT A BANK" ("Third Party Marks"). (Dkt. No. 1, Compl. ¶¶ 3, 34.)

SDCCU and CEFCU are both large credit unions. (Id. ¶ 2.) SDCCU's customers are primarily located in Southern California while CEFCU's customers are primarily located in Peoria, Illinois and northern California. (Id.) At the end of 2008, CEFCU purchased Valley Credit Union in Northern California but did not direct its marketing bearing the CEFCU Mark or CEFCU's Common Law Mark in connection with credit union services outside the Illinois market until June 2011. (Id. ¶ 31.) In June 2011, CEFCU started using the CEFCU Mark in connection with marketing campaigns in the Illinois and California markets. (Id. ¶ 32.)

In early 2016, a CEFCU employee saw a billboard in San Diego, CA containing the SDCCU Mark used to market credit union services and notified CEFCU managers in March 2016. (Id. ¶ 38.) On May 17, 2017, CEFCU filed a petition for cancellation[1] of the '596 Trademark Registration No. for the SDCCU Mark with the U.S. Patent and Trademark Office's ("USPTO") Trademark Trial and Appeal Board ("TTAB") claiming the SDCCU Mark is likely to cause confusion or to cause mistake or to deceive consumers when viewing CEFCU's Mark. (Id. ¶¶ 5, 39; Dkt. No. 1-5, Compl., Ex. D.) On July 3, 2017, SDCCU filed an Answer and Counterclaim in the cancellation proceeding. (Dkt. No. 29-3, Dabney Decl., Ex. 3.) On August 7, 2017, CEFCU filed an Answer to the Counterclaim. (Id., Ex. 4.) On August 28, 2017, SDCCU filed an Amended Counterclaim to which CEFCU timely answered on September 11, 2017. (Id., Exs. 5. 6.) A scheduling order was issued and discovery has taken place. (Id., Ex. 7.) On March 23, 2018, CEFCU filed a motion for leave to amend its petition to add an additional ground for cancellation. (Id., Ex. 17.) Then on May 16, 2018, SDCCU filed this action and moved the PTO for a stay of the cancellation proceedings which the PTO granted on June 8, 2018. (Id., Exs. 1, 23, 24.)

In this action, the complaint alleges that the CEFCU Mark is, in fact, more similar to each of the Third Party Marks than it is to the SDCCU Mark. (Dkt. No. 1, Compl. ¶ 7.) Therefore, if CEFCU believes that the scope of protection for its mark is broad enough to encompass the SDCCU Mark, CEFCU materially misrepresented to the USPTO that the CEFCU Mark was not confusingly similar to any of the Third-Party Marks. (Id.) On the other hand, if CEFCU believes that its mark was not confusingly similar to any of the Third-Party marks, the CEFCU Mark cannot be broad enough to encompass the SDCCU Mark. (Id.) In either case, CEFCU's cancellation action and

---

[1] Citizens Equity First Credit Union v. San Diego Cnty. Credit Union, Cancellation No. 92066165.

threat of lawsuit are objectively baseless and brought with the subjective intent to harm SDCCU.  (Id.)  SDCCU asserts it has a reasonable apprehension that CEFCU will file a lawsuit against it alleging trademark infringement.  (Id. ¶ 47.)

The complaint alleges eight causes of action seeking 1) declaratory judgment of non-infringement of CEFCU. NOT A BANK. BETTER.; 2) declaratory judgment of non-infringement of NOT A BANK. BETTER.; 3) declaratory judgment for invalidity of CEFCU. NOT A BANK. BETTER.; 4) declaratory judgment for invalidity of NOT A BANK. BETTER.; 5) false or fraudulent trademark registration under 15 U.S.C. § 1120; 6) unfair competition under 15 U.S.C. § 1125; 7) unfair competition under California Business & Professions Code section 17200 *et seq*.; and 8) unfair competition under common law.  (Id. ¶¶ 58-109.)

On July 31, 2018, the Court denied Defendant's motion for lack of personal jurisdiction.  (Dkt. No. 39.)  On August 13, 2018, Defendant filed the instant motion to dismiss for lack of subject matter jurisdiction the first four causes of action arguing Plaintiff has not asserted a justiciable claim for alleged infringement under the Declaratory Judgment Act.  (Dkt. No. 40.)  Defendant additionally moves to dismiss the remaining causes of action for failure to state a claim.  In response, Plaintiff does not oppose Defendant's motion to dismiss the seventh and eighth causes of action and agrees to voluntarily dismiss them.  (Dkt. No 42 at 31[2].)  Accordingly, the Court GRANTS Defendant's motion to dismiss the seventh cause of action for unfair competition under California Business & Professions Code section 17200 and eighth cause of action under California common law as unopposed.

## Discussion

## I.    Legal Standard as to Federal Rule of Civil Procedure 12(b)(1)

---

[2] Page numbers are based on the CM/ECF pagination.

Federal Rule of Civil Procedure ("Rule") 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) jurisdictional attacks can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). Here, Defendant is mounting a factual attack on subject matter jurisdiction by providing evidence outside the complaint.

In a factual attack, the challenger provides evidence that an alleged fact in the complaint is false, thereby resulting in a lack of subject matter jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Under a factual attack, the allegations in the complaint are not presumed to be true, White, 227 F.3d at 1242, and "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage v. Glendarle Union H.S., Dist. No. 205, Maricopa Cnty., 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). The district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. See id. However, "[a] court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted)). Ultimately, Plaintiff has the burden to demonstrate that subject matter jurisdiction exists. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).

The Declaratory Judgment Act ("DJA"), provides "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an

5

appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "case of actual controversy" under the DJA refers to Article III's "Cases" and "Controversies" for justiciable claims. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 1919, 126-27 (2007) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 225, 240 (1937)); American States Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir. 1994) (an actual controversy under the DJA is identical to Article III's constitutional case or controversy requirement). To constitute a case or controversy, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 549 U.S. at 127 (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)). [3] Without a "case or controversy", the Court lacks subject matter jurisdiction under Rule 12(b)(1). Fleck and Assoc., Inc. v. Phoenix, an Arizona Mun. Corp., 471 F.3d 1100, 1103–04 (9th Cir. 2006).

The Court conducts a two-step inquiry as to whether it should exercise DJA jurisdiction. First, the district court must "inquire whether there is an actual case or

---

[3] Post-MedImmune, the Ninth Circuit has continued to hold that an actual controversy exists if the plaintiff in a declaratory action has a real and reasonable apprehension that he will be subject to liability for infringement. See E. & J. Gallo Winery v. Proximo Spirits, Inc., 583 Fed. App'x 632, 634 (9th Cir. 2014) (citing to "actual controversy" standard of MedImmune and relying on Societe de Conditionnement v. Hunter Eng'g Co., 655 F.2d 938, 944 (9th Cir. 1981) and Chesebrough-Pond's, Inc. v. Faberge, Inc., 666 F.2d 393, 396 (9th Cir. 1982)); Rhoades v. Avon Products, Inc., 504 F.3d 1151, 1157 (9th Cir. 2007) (relying on Chesebrough Pond's). As stated by one district court, the Ninth Circuit's "real and reasonable apprehension" test continues after MedImmune. Homie Gear, Inc. v. Lanceberg Holdings, LLC, Case No. 16cv1062-BTM(DHB), 2016 WL 6804611 (S.D. Cal. Nov. 16, 2016) (citing Prasco, LLC v. Medics Pharm. Corp., 537 F.3d 1329, 1336 (Fed. Cir. 2008)). "Following MedImmune, proving a reasonable apprehension of suit is only one of many ways a patentee can satisfy the Supreme Court's more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy." Caraco Pharm. Labs, Ltd. v. Forest Labs, Inc., 527 F.3d 1278, 1291 (Fed. Cir. 2008).

controversy within its jurisdiction." <u>Principal Life Ins. Co. v. Robinson</u>, 394 F.3d 665, 669 (9th Cir. 2005) (citation omitted). In the Ninth Circuit, a declaratory judgment action that a trademark is invalid or that the plaintiff is not infringing asserts a case or controversy "if the plaintiff has a real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product." <u>Rhoades v. Avon Prods., Inc.</u>, 504 F.3d 1151, 1157 (9th Cir. 2007) (quoting <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1555-56 (9th Cir. 1990)). In <u>Chesebrough-Pond's</u>, the Ninth Circuit explained,

> In applying this standard, we focused upon the position and perceptions of the plaintiff, declining to identify specific acts or intentions of the defendant that would automatically constitute a threat of litigation. The acts of the defendant were instead to be examined in view of their likely impact on competition and the risks imposed upon the plaintiff, to determine if the threat perceived by the plaintiff were real and reasonable.

<u>Chesebrough-Pond's, Inc. v. Faberge, Inc.</u>, 666 F.2d 393, 396 (9th Cir. 1982) (citing <u>Societe de Conditionnement v. Hunter Eng'g Co.</u>, 655 F.2d 938, 944 (9th Cir. 1981)). The court recognized that "a simple opposition proceeding in the Patent and Trademark Office generally will not raise a real and reasonable apprehension of suit." <u>Id.</u> However, a plaintiff may reasonably infer a threat of a future infringement action based on a letter by the defendant declaring its intent to file opposition proceeding which articulated allegations asserting a prima facie case of trademark infringement. <u>Id.</u> Moreover, the showing of apprehension "need not be substantial" when an allegedly infringing mark is in use. <u>Societe de Conditionnement</u>, 655 F.2d at 944.

Once the first part has been met, the district court must next decide, using the factors in <u>Brillhart v. Excess Ins. Co.</u>, 316 U.S. 491 (1942) and its progeny whether to exercise its jurisdiction. <u>Principal Life Ins. Co.</u>, 394 F.3d at 669. Essentially, the district

court "must balance concerns of judicial administration, comity, and fairness to the litigants." Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1367 (9th Cir. 1991).

## A.    Analysis

Defendant argues that the first, second, third and fourth causes of action should be dismissed for lack of any "actual controversy" pursuant to the DJA.  CEFCU contends that it has not engaged in any threatening or litigious conduct such as a cease and desist letter, emails, or phone calls where it has asserted that SDCCU is infringing CEFCU's Mark.  By filing its petition for cancellation, it is challenging only the registration of SDCCU's mark, not its use.  In opposition, Plaintiff contends that it was under the reasonable apprehension that it would be sued for trademark infringement based on the pleadings filed in the cancellation proceedings before the TTAB and CEFCU's expansion of its credit unions into California.

Defendant's argument improperly focuses on the lack of any overt or concrete threats of potential litigation.  However, the Ninth Circuit adopts a "flexible approach" that focuses on "the position and perceptions of the plaintiff" and not on "specific acts or intentions of the defendant." Rhoades, 504 F.3d at 1157-58 (quoting Chesebrough–Pond's, 666 F.2d at 396).  Under the "flexible approach" concrete threats of litigation are not required to demonstrate a reasonable apprehension of an infringement suit.  Id. at 1158; see also 6 J. Thomas McCarthy, Trademarks and Unfair Competition § 32.51 (4th ed. 2007) (noting that to state "an actual controversy . . . [a] threat of infringement does not have to be said in so many words. It can be expressed in the attitude of the defendant as expressed, for example,] in 'circumspect language in a letter.'").

In Chesebrough, the Ninth Circuit held that the plaintiff could draw reasonable inferences of a threat of an infringement action based on a letter by the defendant indicating the defendant's intent to file opposition proceedings and outlining a prima facie case for trademark infringement.  666 F.2d at 396-97.  Bolstering the plaintiff's

claim of a threat of litigation was the fact that the defendant did not act "to dispel such an inference" and instead filed a counterclaim seeking damages for infringement. Id. In conclusion, the court stated "although there was no actual threat by [the defendant] that it would sue [the plaintiff] for trademark infringement, [the plaintiff] had a real and reasonable apprehension that such action would be taken." Id. at 397.

Relying on the ruling in Chesebrough-Pond's, district court cases in this Circuit as well as this Court in a recent case, have held that a pre-suit letter or a notice of opposition filed with the USPTO that lays out the elements of a cause of action for trademark infringement, by itself, is sufficient to create a reasonable apprehension of litigation for infringement, and consequently satisfies the actual controversy requirement under the DJA. See Copasetic Clothing Ltd. v. Roots Canada Corp., Case No. 17cv2300-GPC(KSC), 2018 WL 4051693, at *4 (S.D. Cal. Aug. 24, 2018) ("DJA jurisdiction may lie—based on the allegations contained in TTAB materials alone—where the defendant's opposition articulates the prima facie elements of trademark infringement."); Whole E Nature, LLC v. Wonderful Co., LLC, No. 17cv10-LAB(KSC), 2017 WL 4227150, at *2-3 (S.D. Cal. Sept. 22, 2017) (opposition papers filed with USPTO asserting infringement allegations sufficient to show the plaintiff had a reasonable apprehension of litigation); FN Cellars, LLC v. Union Wine Co., No. 15cv2301 JD, 2015 WL 5138173, at *3 (N.D. Cal. Sept. 11, 2015) (pre-lawsuit letter laying out the elements of a potential infringement action and threatening that if the mark was not abandoned, it would file a cancellation proceeding were sufficient to establish existence of an actual and justiciable controversy and subsequent cancellation action invoking trademark infringement and dilution language further supported jurisdiction); Neilmed Prods., Inc. v. Med-Systems Inc., 472 F. Supp. 2d 1178, 1180-82 (N.D. Cal. 2007) (defendant's notice of opposition that laid out elements of an infringement claim satisfied the actual controversy requirement because such actions could give the plaintiff a reasonable apprehension of liability). In

_Neilmed_, the district court rejected the defendant's argument that a mere filing of a notice of opposition to a trademark registration application with the PTO does not provide grounds for the plaintiff to have a reasonable apprehension of litigation. _Neilmed_, 472 F. Supp. at 1180-81. The court explained that the defendant's notice of opposition "invoked the language of trademark infringement and dilution, which could give Plaintiff a reasonable apprehension that Defendant would sue Plaintiff if Plaintiff continues to use its [mark]." Id. at 1181.

In this case, the petition for cancellation alleges the elements of a cause of action for trademark infringement.[4] (Dkt. No. 1-5, Compl., Ex. D, Cancel. Pet.) To prevail on a claim of trademark infringement, a plaintiff must prove "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1144 (9th Cir. 2011) (citation omitted); 15 U.S.C. § 1114. Trademark infringement requires a showing that the "public is likely to be deceived or confused by the similarity of the marks." Slep-Tone Entm't Corp. v. Wired for Sound Karaoke and DJ Servs., LLC, 845 F.3d 1246, 1249 (9th Cir. 2017).

Before the TTAB, the petition for cancellation states that CEFCU is the owner of registered trademark CEFU. NOT A BANK. BETTER. (Dkt. No. 1-5, Compl., Ex. D, Cancel. Pet. ¶ 2.) Both CEFCU and SDCCU provide identical credit union services. (Dkt. No. 1-5, Compl., Ex. D, Cancel. Pet. ¶ 6.) Both CECFU and SDCCU market credit union services to the same customers. (Id. ¶¶ 7. 8.) SDCCU's challenged mark

---

[4] Defendant argues that its petition for cancellation merely tracks the language of 15 U.S.C. § 1052(d) concerning trademark registration. However, in Chesebrough-Pond's, the Ninth Circuit recognized the "likelihood of confusion" standard is relevant to both registration and infringement proceedings; nonetheless the court held it was reasonable for the plaintiff to infer a threat of an infringement action based on the prima facie allegations presented in a letter declaring the defendant's intent to file opposition proceedings. Chesebrough-Pond's, 666 F.2d at 396.

resembles CEFCU's registered mark and will likely "cause confusion, or to cause mistake or to deceive . . . ."[5] (Id. ¶ 9.) Finally, "Petitioner believes it will be damaged by continued registration of the Challenged Mark because such registration gives false color to Respondent's claim of right to *use* IT'S NOT BIG BANK BANKING. IT'S BETTER. and encourages Respondent's misleading and deceptive use of the Challenged Mark in derogation of Petitioner's prior and superior rights in its incontestable registered service mark, CEFCU. NOT A BANK. BETTER." (Id. ¶ 10 (emphasis added).) Moreover, CEFCU filed an Amended Petition for Cancellation where an additional count for cancellation based on its unregistered service mark "NOT A BANK. BETTER" and asserts the same allegations of trademark infringement as the original petition. (Dkt. No. 42-5, Salen Decl., Ex. 3.)

Plaintiff also claims that in the initial disclosures provided by Defendant during the cancellation proceeding, CEFCU indicated it would submit documents "evidencing the potential for damage to CEFCU by reason of *respondent's use* of 'ITS NOT BIG BANK BANKING. IT'S BETTER' as a purported designation of the origin of services offered by respondent." (Dkt. No. 42-4, Salen Decl., Ex. 2 at 4 (emphasis added).) From Plaintiff's perspective, the language in the disclosure using the word "use" of SDCCU's Mark, creates a reasonable apprehension that it could be sued for trademark infringement if it continues to use its Mark.

The Court also noted in its prior order on personal jurisdiction that the facts and impetus underlying the cancellation proceedings arise from CEFCU's increasing contacts in California. San Diego Cnty. Credit Union v. Citizens Equity First Credit Union, -- F.

_____

[5] In a footnote, Defendant states that the Court, in its prior order, incorrectly stated that the petition filed with the TTAB alleged a "likelihood of confusion based on the use of the respective marks in California." (Dkt. No. 40-1 at 15 n.2.) The Court disagrees. As the Court quotes from the TTAB petition above, CEFCU alleged a likelihood of confusion based on SDCCU's use of its alleged infringing mark. (Dkt. No. 1-5, Compl., Ex. D, Cancel. Pet. ¶¶ 9, 10.)

Supp. 3d --, 2018 WL 3629969, at \*6 (S.D. Cal. July 31, 2018).  Due to CEFCU's expansion into the California market, in the analysis for personal jurisdiction, the Court concluded that "CEFCU's contacts in California form the basis of SDCCU's reasonable concern that CEFCU would file suit for infringing its federally registered and common law trademark."  Id.

District court decisions from the Second Circuit cited by the Defendant are inapposite as those cases dealt with challenging the registration of an alleged infringing mark and not its use.  See Bruce Winston Gem Corp. v. Harry Winston, Inc., No. 09 CIV 7352(JGK), 2010 WL 3629592, at \*5 (S.D.N.Y. Sept. 16, 2010) (finding no justiciability "where the defendants do not object to the plaintiff's current use of its mark, and the only immediate and definite controversy is over the registration of that mark"); American Pioneer Tours, Inc. v. Suntrek Tours, Ltd., No. 97 Civ. 8220, 1998 WL 60944, at \*3-4 (S.D.N.Y. Feb. 13, 1998) (documents submitted show that although the parties were engaged in tense negotiations it did not prompt the defendant to threaten suit even indirectly); Vina Casa Taya S.A. v. Oakville Hills Cellar, Inc., 784 F. Supp. 2d 391, 393-94 (S.D.N.Y.  2011) (no case or controversy under the DJA based on cease-and-desist letter asserting that the plaintiff's mark was "confusingly similar" to the defendant's mark but asserted no objection to the plaintiff's use of the mark).  Moreover, the district court in 1-800-Flowers.com, Inc. v. Edible Arrangements, LLC, 905 F. Supp. 2d 451, 455 (E.D.N.Y. 2012) relied on Merrick v. Sharp & Dohme, Inc., 185 F.2d 713, 716-17 (7th Cir. 1951) ("A notice of opposition, in proper form, should not be construed to be a charge of infringement or a threat to proceed to redress past infringements or to prevent future infringements."), which was rejected by the Ninth Circuit in Chesebrough-Pond's as inconsistent with the Ninth Circuit approach.  See Chesebrough-Pond's, 666 F.2d at 396.  Consequently, 1-800 Flower.com provides no support for Defendant's position.

Finally, Defendant's citation to <u>Merit Healthcare Int'l, Inc. v. Merit Med. Sys., Inc.</u>, 721 Fed. App'x 628, 629 (9th Cir. 2018) is distinguishable on the facts because the correspondence between the parties did not demonstrate that Merit Medical had taken an adverse legal position. <u>Id.</u> at 629. The Ninth Circuit affirmed dismissal of complaint where the complaint only alleged similarity of marks and goods, and not likelihood of confusion so apprehension was not reasonable based on the allegations in the complaint. <u>Id.</u>

Because the petition for cancellation, the amended petition for cancellation and the initial disclosures allege the elements for a cause of action for trademark infringement, Plaintiff has demonstrated that it had a real and reasonable apprehension that it would be subject to an infringement action.[6] Moreover, because SDCCU continues to use the alleged infringing Mark, Plaintiff's showing of apprehension need not be substantial. <u>See Societe</u>, 655 F.2d at 944.

Next, the Court considers whether it should assert jurisdiction over the DJA claims. The Supreme Court, in <u>Brillhart</u>, and the Ninth Circuit, in <u>Gov't Employees Ins. Co. v. Dizol</u>, 133 F.3d 1220, 1225 (9th Cir. 1998), identified a number of prudential factors for the Court to consider in deciding whether to exercise jurisdiction. District courts "should avoid needless determination of State law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." <u>Dizol</u>, 133 F.3d at 1225. Also relevant is "whether the declaratory action will settle all aspects of the controversy," "whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res

---

[6] Plaintiff also cites to CEFCU's Rule 30(b)(6) witness, Susan Portscheller, who testified that when she first learned about the SDCCU Mark, she believed it constituted trademark infringement. However, her testimony is not relevant to the Court's analysis as her statements were not revealed to Plaintiff prior to instituting this lawsuit and cannot be used to determine Plaintiff's perceptions of potential litigation.

13

judicata' advantage," and "the convenience of the parties, and the availability and relative convenience of other remedies." Id. at 1225 n.5 (citation omitted).

Plaintiff argues that its claim for non-infringement of CEFCU's trademarks as well as its validity/cancellations claims are properly before this Court as the TTAB is limited to deciding the cancellation issue and not infringement and this forum would address all aspects of the litigation. Moreover, district courts have jurisdiction to review any TTAB decision. Defendant replies that SDCCU is engaged in forum shopping by attempting to short-circuit the cancellation proceeding that is in an advanced stage.

Because the TTAB is limited to deciding the right to register a trademark and cancellation issue, see Rhoades, 504 F.3d at 1163 and not infringement issues, then litigation in this action would be preferable because the Court will be able to resolve all issues in the case. See FN Cellars, 2015 WL 5138173, at *4. As noted by the court in Whole E Nature, LLC, the TTAB is not "a 'forum' in the sense that courts are" because TTAB decisions may be challenged in district court. Whole E Nature, LLC, 2017 WL 4227150, at *3; see Neilmed, 472 F. Supp. 2d at 1182 ("the mere commencement of federal litigation does not constitute forum-shopping or procedural fencing, however expensive litigation might be" based on limited jurisdiction of TTAB). Given the TTAB limitations in its ability to resolve the issues presented, Defendant's argument of forum shopping is without merit.

Because this case involves trademark non-infringement and invalidity claims, a "declaratory action is preferable to a TTAB action for addressing 'all aspects of the controversy' between the parties, because the TTAB cannot address a trademark non-infringement claim." FN Cellar, LLC, 2015 WL 5138173, at *4 (citing Dizol, 133 F.3d at 1225 n.5). Accordingly, the Court exercises its jurisdiction to consider the issues in this case. The Court DENIES Defendant's motion to dismiss for lack of subject matter jurisdiction.

18cv967-GPC(RBB)

## II.     Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc.,

18cv967-GPC(RBB)

957 F.2d 655, 658 (9th Cir. 1992) (quoting <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. <u>See</u> <u>DeSoto</u>, 957 F.2d at 658; <u>Schreiber</u>, 806 F.2d at 1401.

## III. Legal Standard as to Federal Rule of Civil Procedure 9(b)

Where a plaintiff alleges fraud in the complaint, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) requires that the circumstances constituting the alleged fraud "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation omitted). A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted). As such "[a[verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." <u>Kearns</u>, 567 F.3d at 1124 (citing <u>Vess v. Ciba-Geigy Corp. U.S.A.</u>, 317 F.3d 1097, 1106 (9th Cir. 2003)).

### A. Fifth Cause of Action – 15 U.S.C. § 1120

Defendant moves to dismiss the fifth cause of action for false or fraudulent trademark registration because it fails to plead fraud with particularity. Specifically, it argues that Defendant has not "alleged a subjective intent to deceive the PTO" and fails to identify what is false and why it is false. Plaintiff disagrees arguing it alleged facts to support a cause of action under Rule 9 by asserting the who, what, when, where and how of the alleged fraudulent trademark registration.

The Complaint alleges that on September 1, 2010, CEFCU filed a declaration from its Vice-President, Susan K. Yoder, with the USPTO during the registration of the CEFCU Mark, asserting that the CEFCU Mark was used in interstate commerce as of February 5, 2007 with the intent to deceive the USPTO in order to advance CEFCU's Mark registration.  (Dkt. No. 1, Compl. ¶¶ 37, 88; Dkt. No. 1-4, Compl., Ex. C.)  But prior to June 2011, CEFCU did not direct its advertising using its Mark outside of the Illinois market.  (Dkt. No. 1, Compl. ¶ 36.)  In addition, Plaintiff alleges that CEFCU falsely stated that its Mark would not likely cause consumer confusion with respect to pre-existing marks of which it was aware including Third Party Marks such as the "IT'S NOT A BANK" mark of Warren Federal Credit Union, "BETTER THAN A BANK" mark of ABNB Federal Credit Union and "NOT A BANK-BETTER!" mark of United 1st Federal Credit Union.  (Id. ¶¶ 34, 89.)  The false assertion was made with the intent to deceive the USPTO so that its Mark would advance to registration.  (Id. ¶ 89.)  CEFCU's Mark would have not advanced to registration if CEFCU had not declared that the CEFCU Mark would not likely cause consumer confusion concerning pre-existing marks for credit union services.  (Id.)  On information and belief, the false statements in the declaration filed with the USPTO were willful and meant to deceive and constitute fraud. (Id. ¶ 90.)

These assertions sufficiently allege a cause of action for fraudulent trademark registration under 15 U.S.C. § 1120 under Rules 8 and 9.  Plaintiff alleges the who, what, when, where and how of the alleged false statement made to the USPTO.  Defendant's arguments focus on the merits of the claim, which is not appropriate on a motion to dismiss, rather than whether the elements of the claim were properly alleged.  Moreover, contrary to Defendant's argument that Plaintiff failed to allege a subjective intent to deceive the PTO with particularity, Rule 9(b) does not require specificity concerning intent but specifically states that [m]alice, intent, knowledge, and other conditions of a

person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  Defendant's citation to In re Bose Corp., 580 F.3d 1240, 1245 (Fed. Cir. 2009) is inapposite as it involved an appeal of the TTAB's ruling on the merits, not a motion to dismiss, that Bose committed fraud on the PTO.  Defendant also cites to the Court's ruling in Mygo, LLC v. Mission Beach Indus., LLC, Case No. 16cv2350-GPC(RBB), 2017 WL 107346, *6 (S.D. Cal. Jan. 11, 2017), where it held there were no facts from which the Court could "reasonably infer that specific individuals affiliated with Mygo had the requisite knowledge and specific intent to deceive the PTO."  In Mygo, the Court cited to Exergen where the Federal Circuit held that "although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO."  Id. at 5 (quoting Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1328–29 (Fed. Cir. 2009)).

Here, the Complaint alleges that CEFCU misrepresented to the USPTO that it used its Mark in interstate commerce as of February 5, 2007, (Dkt. No. 1, Compl. ¶¶ 37, 88), but it was not until June 2011 when CEFCU began using the Mark outside of the Illinois market, (id. ¶¶ 31, 32, 36).  Moreover, CEFCU falsely stated that the CEFCU Mark would not likely cause consumer confusion but knew of pre-existing similar marks of third parties.  (Id. ¶¶ 34, 37, 89.)  Plaintiff claims that the false statements filed with the USPTO were willful and made with the intent to deceive the USPTO.  (Id. ¶¶ 73, 74, 88, 89, 90.)  The Court concludes Plaintiff has alleged facts from which the Court can reasonably infer that Defendant "knew of the falsity of the misrepresentation" and "misrepresented this information with a specific intent to deceive the PTO."  See Exergen

1  Corp., 575 F.3d at 1328-29.  The Court DENIES Defendant's motion to dismiss based on

2  its argument that the complaint does not comply with Rule 9(b).

3       Next, Defendant moves to dismiss the fifth cause of action because the sole

4  damages Plaintiff seeks is attorney's fees which do not constitute "damages" under 15

5  U.S.C. § 1120.  Plaintiff argues that attorney's fees and costs are allowable under 15

6  U.S.C. § 1120 and attorney's fees and costs are one of other consequential damages it

7  seeks.

8       Section 38 of the Lanham Act provides that "[a]ny person who shall procure

9  registration in the Patent and Trademark Office of a mark by a false or fraudulent

10 declaration or representation, oral or in writing, or by any false means, shall be liable in a

11 civil action by any person injured thereby for *any damages sustained in consequence*

12 thereof."  15 U.S.C. § 1120 (emphasis added).  The Ninth Circuit has not addressed the

13 issue of whether attorney's fees constitute damages under section 38 of the Lanham Act.

14 See e.g., Roxbury Entm't v. Penthouse Media Grp., Inc., No. 2:08cv3872-FMC0JWJx,

15 2009 WL 2950324, at *5 (C.D. Cal. Apr. 3, 2009) (the "Ninth Circuit has not directly

16 spoken on this issue" of whether attorneys' fee and costs are recoverable under Section

17 38.").

18       In support, Plaintiff solely cites to two out-of-state district court cases which no

19 longer have any precedential weight.  In Money Store v. Harriscorp Fin. Corp., No. 77 C

20 3175, 1981 WL 48153, at *1-2 (N.D. Ill. Mar. 25, 1981), the district court granted an

21 award of attorneys' fees as damages under § 120.  However, on appeal, the award of

22 damages under section 38 was reversed because there was no evidence that the

23 defendants acted fraudulently in obtaining the mark's registration.  689 F.2d 666, 678-79

24 (7th Cir. 1982).  The Seventh Circuit further noted it would express no opinion whether

25 attorneys' fees constitute damages under section 38.  Id.  Plaintiff also cites to a 1965

26 New York district court case allowing damages under section 38 in the form of attorney's

27

28                                                                    18cv967-GPC(RBB)

fees. <u>Merry Hull & Co. v. Hi-Line Co.</u>, 243 F. Supp. 45, 56 (S.D.N.Y. 1965). However, the Second Circuit has specifically rejected its holding noting it preceded the Supreme Court's holding in <u>Fleischmann Distilling Corp. v. Maier Brewing Co.</u>, 386 U.S. 714 (1967). <u>Bluebell, Inc. v. Jaymar-Ruby, Inc.</u>, 497 F.2d 433, 438 (2d Cir. 1974).

In <u>Fleischmann Distilling Corp. v. Maier Brewing Co.</u>, 386 U.S. 714 (1967), the Supreme Court held that attorney's fees were not available under section 35 of the Lanham Act absent express statutory authority especially in light of the meticulously detailed remedies provided for in the Lanham Act. <u>Id.</u> at 716-17, 719-20. In response to <u>Fleishmann</u>, in 1975, Congress amended section 35 of the Lanham Act and gave the Court discretion to award reasonable attorneys' fees to a prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). <u>See</u> <u>Securacomm Consulting, Inc. v. Securacom Inc.</u>, 224 F.3d 273, 279 (3d Cir. 2000). <u>Fleischmann</u> and the 1975 amendment to the Lanham Act concerned section 35 of the Lanham Act, not section 38, the relevant provision in this case.

Other circuit courts have concluded that because section 38 was not amended by Congress, attorney's fees under section 38 are barred. <u>Aromatique, Inc. v. Gold Seal, Inc.</u>, 28 F.3d 863, 876-77 (8th Cir. 1994) (rejecting fees as a part of damages under section 38); <u>United Phosphorus, Ltd. v. Midland Fumigant, Inc.</u>, 205 F.3d 1219, 1232 (10th Cir. 2000) (noting that § 1120 does not allow for an award of attorney's fees); <u>Exxon Corp. v. Exxene Corp.</u>, 696 F.2d 544, 551 (7th Cir. 1982) ("[T]he only damages proved by Exxene-its attorney's fees-were not recoverable as damages under [section 38]."); <u>see also</u> <u>Blue Bell, Inc. v. Jaymar-Ruby, Inc.</u>, 497 F.2d 433, 439 (2d Cir. 1974)[7]

---

[7] While the Second Circuit held that attorneys fee's are not specifically provided under section 38 and should be barred, it left open the possibility that attorneys' fees "might be awarded" as a matter of equity apart from section 38, "where an absolutely false registration was fraudulently obtained solely for the purpose of instituting completely vexatious litigation." <u>Blue Bell, Inc.</u>, 497 F.2d at 439. In this case, Plaintiff have not made such an allegation.

(decided prior to 1975 amendment to section 35 and relying on <u>Fleischmann</u> to hold that attorney's fees are not recoverable under section 38).

In line with the reasoning in <u>Fleischmann</u>, addressing section 35, that an award of attorneys' fees as damages under the Lanham Act should be barred unless expressly provided in statute, the Court concludes that because section 38 does not provide for attorney's fees, such fees are barred. Accordingly, the Court concludes that Plaintiff has not demonstrated that attorney's fees are recoverable under section 38 and GRANTS Defendant's motion to dismiss the fifth cause of action for failing to allege damages. In its opposition, Plaintiff suggests that it has also alleged that CEFCU's fraudulent conduct of obtaining a false registration has damaged SDCCU's business, including by stifling SDCCU's ability to freely use and/or expand its use of the SDCCU Mark" (Dkt. No. 42 at 29.) Because such damage allegations are not specifically alleged in the Complaint, the Court GRANTS Defendant's motion to dismiss with leave to amend because an amendment to specify damages would not be futile. <u>See</u> <u>DeSoto</u>, 957 F.2d at 658; <u>Schreiber</u>, 806 F.2d at 1401.

## B. Sixth Cause of Action – Unfair Competition, 15 U.S.C. § 1125

Defendant moves to dismiss the Lanham Act unfair competition claim because the acts alleged against it do not fall under the text of 15 U.S.C. § 1125 as there are no allegations of "commercial advertising or promotion" or "affiliation, connection, or association . . . with another person" or "the origin, sponsorship, or approval of [CEFCU] goods, services, or commercial activity by another person." Plaintiff responds that his unfair competition claim should be construed broadly in view of the general language of § 1125(a) together with its legislative history. Dkt. No. 42 at 29.

The Complaint alleges that to the extent that the alleged representations made to the USPTO in its trademark registration application is true, then CEFCU's assertions in its petition for cancellation that SDCCU's Mark is likely to cause confusion in relation to

CEFCU's Mark is groundless. (Dkt. No. 1, Compl. ¶¶ 93-95.) CEFCU's filing of the petition for cancellation despite knowing it is baseless is oppressive and CEFCU filed the petition to obstruct SDCCU's business or cause harm to it. (Id. ¶¶ 96-97.)

The Lanham Act was intended to make "actionable the deceptive and misleading use of marks," and "to protect persons engaged in . . . commerce against unfair competition." 15 U.S.C. § 1127. Section 43(a) of the Lanham Act provides, in pertinent part:

> (1) Any person who, on or in connection with any goods or services… uses in commerce…[any] false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (emphasis added).

Here, Plaintiff does not dispute that it has not alleged the elements to support a false designation of origin, false description of goods claim or false advertising, under § 1125. Instead, citing Jurin v. Google Inc., 768 F. Supp. 2d 1064, 1071-72 (E.D. Cal. 2011) and Iowa Health Sys. v. Trinity Health Corp., 177 F. Supp. 2d 897, 929-31 (N.D. Iowa 2001), it argues that "unfair competition" under § 1125 is defined broadly and covers the alleged false representations made by CEFCU to the USPTO on its application to register its Mark and in the petition for cancellation.

In <u>Jurin</u>, the plaintiff alleged that Google's use of the AdWords program and its keyword suggestion tool created a false association between the plaintiff's "Styrotrim" building materials and those of its competitors. <u>Jurin</u>, 768 F. Supp. 2d at 1071. Google argued that § 1125(a)(1)(A) is limited to the producer of the goods that has caused consumer confusion. <u>Id.</u> The court construed § 1125(a)(1) broadly and found that even though Google was a search engine and not a producer of materials, it was a "person" covered by the statute. <u>Id.</u> at 1072. Given that <u>Jurin</u> did not allege any false representations, it offers no support for Plaintiff's position.

In <u>Iowa Health Sys.</u>, the plaintiffs alleged the defendants made bad faith assertions of trademark rights with knowledge that they had no superior rights and made representations to the public[8] to create confusion about the scope of the parties' trademark rights with the purpose of damaging the opposing parties' business. <u>Iowa Health Sys.</u>, 177 F. Supp. 2d at 926, 929-32. At the outset, the court observed that asserting rights enforceable by statute is not actionable as unfair competition. <u>Id.</u> at 930 (citing <u>Informix Software, Inc. v. Oracle Corp.</u>, 927 F. Supp. 1283, 1287 (N.D. Cal. 1996)); <u>cf.</u> <u>Handgards, Inc. v. Ethicon, Inc.</u>, 601 F.2d 986, 990-93 (9th Cir. 1979) (patentees must be permitted to test the validity of their patents in court through actions against alleged infringers). However, the court found the allegations made were sufficient to state a claim of "unfair competition" under the Lanham Act "because they go beyond allegation merely of legitimate enforcement of trademark rights to conduct

---

[8] In the case, the plaintiffs argued that the filing of a counterclaim asserting trademark rights greater than what was conveyed to the defendants constituted unfair competition under the Lanham Act as it was intended to create confusion about the proper scope of the parties' trademark rights. The court held that these alleged representations to the "public" to create confusion about the scope of the parties' trademark rights was sufficient to state a claim. The court implicitly concluded that the filing of the counterclaim constitutes representations to the "public." However, in support of its ruling, the court relied solely on cases where the alleged deceptive communication was made to business customers.

intended to create confusion about the proper scope of the trademark rights of the parties, with the purpose of damaging" the plaintiffs' business.  Id. at 932.

In arriving at its decision, the court in Iowa Health appeared to require communication of the false statement to the public by implicitly finding that the filing of a counterclaim constitutes a representation to the public.  Such a requirement would be consistent with the language of § 43(a) which requires the subject false statement to be used in commerce.  Iowa Health, itself, relied on cases that involved representations made to business customers which created confusion.  See, e.g., Laitram Machinery, Inc. v. Carnitech A/S, 901 F. Supp. 1155, 1162 (E.D. La. 1995) (defendant made false representations to plaintiff's customers that plaintiff had infringed defendant's patent rights precluded summary judgment for defendant on plaintiff's Lanham Act claim); Larami Corp. v. Amron, 36 U.S.P.Q. 2d 1073, 1084 (E.D. Pa. 1995) (defendant sent letters to plaintiff's customers threatening legal action for patent and trademark infringement against anyone buying or selling plaintiff's products); Accent Designs, Inc. v. Jan Jewelry Designs, Inc., 827 F. Supp. 957, 964–65 (S.D.N.Y. 1993) (defendant made false representations to plaintiff's customers that plaintiff was infringing defendant's patent); Brandt Consolidated, Inc. v. Agrimar Corp., 801 F. Supp. 164, 170 (C.D. Ill. 1992) (denying motion to dismiss Lanham Act claim based on allegation that defendant sent false patent infringement letters to plaintiff and its customer); Laser Diode Array, Inc. v. Paradigm, Lasers, Inc., 964 F. Supp. 90, 95-96 (W.D.N.Y. 1997) (counterclaim alleging unfair competition under Lanham Act stated a claim based on allegations that a party falsely represented to a business's customers that the business was infringing on the party's patent rights.).

Given the "uses in commerce" requirement and the cases that Iowa Health relied on, there is little support for the idea that a filing of an action by itself will pass the "uses in commerce" requirement.  In determining whether communication of the false

18cv967-GPC(RBB)

statement in commerce is necessary, the Court finds guidance in cases addressing whether the filing of a patent infringement lawsuit constitutes unfair competition under the Lanham Act. The Federal Circuit has stated that "the initiation of an infringement suit is clearly not covered by the text of § 43(a), while a communication to the customers of the accused infringer, in certain circumstances, may be." Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1350 (Fed. Cir. 1999). The court explained that recognizing an unfair competition claim regarding marketplace statements of infringement "will further the statutory purposes of § 43(a) of 'preventing deception and unfair competition' in the marketplace." Id. at 1354 (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 773 (1992)); see also RPost Holdings, Inc. v. Trustifi Corp., No. CV 10–1416 PSG (SHx), 2010 WL 4025754, at *2-3 (C.D. Cal. Oct. 10, 2010) (following Zenith and concluding that filing of a patent infringement lawsuit itself does not constitute unfair competition under the Lanham Act but a cause of action based upon marketplace statements about the lawsuit, if made in bad faith, may survive); IMCS, Inc. v. D.P. Tech. Corp., 264 F. Supp. 2d 193, 197 (E.D. Pa. 2003) (relying on Zenith and noting that, with respect to a related patent infringement suit, "a lawsuit that alleges unfair competition must be based on marketplace statements or misconduct and cannot be based merely on the filing of a lawsuit to enforce a presumptively valid patent"); Buying For The Home, LLC v. Humble Abode, LLC, 459 F. Supp. 2d 310, 331 (D.N.J. 2006) (noting that Lanham Act prohibits false designations of origin or misleading descriptions of goods or services which are likely to cause confusion and does not contemplate unfair competition based on the filing of a lawsuit).

These cases demonstrate that the protections of the Lanham Act seek to guard against deceptive practices in commerce or the marketplace and prohibit conduct that will create a likelihood of confusion. See New West Corp. v. N.Y.M. Co. of California, 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation infringement, unfair

competition or false designation of origin, the test is identical[-]is there a 'likelihood of confusion'?"); Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1506 (9th Cir. 1987) (citation omitted) ("Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides a remedy for a broad range of deceptive practices in commerce."); L & L White Metal Casting Corp. v. Joseph, 387 F. Supp. 1349, 1356 (E.D.N.Y. 1975) ("The purpose of § 1125(a) was to create a new federal cause of action for false representation of goods in commerce in order to protect persons engaged in commerce from, among other things, unfair competition, fraud and deception which had theretofore only been protected by the common law.").

Given the above analysis, the Court concludes that an unfair competition cause of action under the Lanham Act requires the false or misleading statement of fact to be made to the public or to consumers so as to be able to create a likelihood of confusion.

Here, the Complaint does not present an allegation that CEFCU communicated any alleged misrepresentation about its trademark rights in commerce, i.e. the marketplace. Plaintiff's broad interpretation of § 1125(a) is not legally supported, and the Court concludes that Plaintiff has not sufficiently alleged a Lanham Act unfair competition claim. Accordingly, the Court GRANTS Defendant's motion to dismiss the sixth cause of action for failure to state a claim. Because the Court grants Plaintiff leave to amend the fifth cause of action, the Court also GRANTS Plaintiff leave to amend the sixth cause of action as Plaintiff may be able to cure the deficiency and an amendment would not be futile. See DeSoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

## Conclusion

Based the above, the Court DENIES Defendant's motion to dismiss for lack of subject matter jurisdiction the first, second, third and fourth causes of action, and

////

////

GRANTS Defendant's motion to dismiss the fifth and sixth causes of action with leave to amend. Plaintiff shall file an amended complaint on or before **October 16, 2018**.

IT IS SO ORDERED.

Dated: October 2, 2018

Hon. Gonzalo P. Curiel
United States District Judge

18cv967-GPC(RBB)