UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COUNTY CREDIT UNION,<br><br>                                  Plaintiff,<br><br>v.<br><br>CITIZENS EQUITY FIRST CREDIT UNION,<br><br>                                  Defendant. | Case No.:  18cv967-GPC(RBB)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br>**[Dkt. No. 49.]** |

Before the Court is Defendant's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and motion for discretionary dismissal under Federal Rule of Civil Procedure 57.  (Dkt. No. 49.)  Plaintiff filed an opposition on November 16, 2018.  (Dkt. No. 52.)  Defendant replied on December 7, 2018.  (Dkt. No. 53.)  Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument.  Based on the reasoning below, the Court DENIES

Defendant's motion to dismiss for lack of subject matter jurisdiction and GRANTS in part and DENIES in part Defendant's motion to dismiss for failure to state a claim.

## Procedural Background

On May 16, 2018, Plaintiff San Diego County Credit Union ("SDCCU") filed a complaint against Defendant Citizens Equity First Credit Union ("CEFCU") alleging the following causes of action: 1) declaratory judgment of non-infringement of federally registered trademark for "CEFCU. NOT A BANK. BETTER."; 2) declaratory judgment of non-infringement of common law mark "NOT A BANK. BETTER."; 3) declaratory judgment for invalidity of federally registered trademark for "CEFCU. NOT A BANK. BETTER."; 4) declaratory judgment for invalidity of common law mark "NOT A BANK. BETTER."; 5) false or fraudulent trademark registration under 15 U.S.C. § 1120; and 6) unfair competition under 15 U.S.C. § 1125.[1] (Dkt. No. 1. Compl, ¶¶ 58-98.)

On July 31, 2018, the Court denied Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2). (Dkt. Nos. 29, 39.) On October 2, 2018, the Court denied Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) on the first four causes of action for declaratory judgment, and granted Defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6) on the fifth and sixth causes of action with leave to amend. (Dkt. Nos. 40, 47.)

On October 12, 2018, Plaintiff filed a first amended complaint, ("FAC") alleging the same six causes of action with additional factual allegations. (Dkt. No. 48, FAC.) On October 26, 2018, Defendant filed the instant fully briefed motion to dismiss for lack of subject matter jurisdiction on the first four causes of action for declaratory relief as well

---

[1] Plaintiff agreed to voluntarily dismiss the seventh and eighth causes of action alleging unfair competition under California law. (Dkt. No. 47 at 4.)

as discretionary dismissal under Rule 57, and failure to state a claim on the fifth and sixth causes of action under the Lanham Act. (Dkt. Nos. 49, 52, 53.)

**Factual Background**

SDCCU owns over 40 federally registered trademarks in connection with its credit union services, including U.S. Trademark Registration No. 4,560,596 for "IT'S NOT BIG BANK BANKING. IT'S BETTER" (the "SDCCU Mark") which issued on July 1, 2014. (Dkt. No. 48, FAC ¶ 25; Dkt. No. 48-2, FAC, Ex. A.) CEFCU owns U.S. Trademark Registration No. 3,952,993 for "CEFCU. NOT A BANK. BETTER" (the "CEFCU Mark") which issued on May 3, 2011. (Dkt. No. 48, FAC ¶ 33; Dkt. No. 48-3, FAC, Ex. B.) CEFCU also allegedly uses the common law mark "NOT A BANK. BETTER". (Dkt. No. 48, FAC ¶ 14.) Prior to filing the trademark application for the CEFCU Mark, CEFCU conducted a trademark search report and, on information and belief, learned that several third-party credit unions already used trademarks similar to the CEFCU Mark such as "NOT A BANK – BETTER!", "BETTER THAN A BANK", and "IT'S NOT A BANK" ("Third Party Marks"). (Dkt. No. 48, FAC ¶¶ 3, 34.)

SDCCU and CEFCU are both large credit unions. (Id. ¶ 2.) SDCCU's customers are primarily located in Southern California while CEFCU's customers are primarily located in Peoria, Illinois and Northern California. (Id.) At the end of 2008, CEFCU purchased Valley Credit Union in Northern California but did not direct its marketing bearing the CEFCU Mark or CEFCU's Common Law Mark in connection with credit union services outside the Illinois market until June 2011. (Id. ¶ 31.) In June 2011, CEFCU started using the CEFCU Mark in connection with marketing campaigns in the Illinois and California markets. (Id. ¶ 32.)

In early 2016, a CEFCU employee saw a billboard in San Diego, CA containing the SDCCU Mark used to market credit union services and notified CEFCU managers in

March 2016.  (Id. ¶ 38.)  On May 17, 2017, CEFCU filed a petition for cancellation[2] of the '596 Trademark Registration No. for the SDCCU Mark with the U.S. Patent and Trademark Office's ("USPTO") Trademark Trial and Appeal Board ("TTAB") claiming the SDCCU Mark is likely to cause confusion or to cause mistake or to deceive consumers when viewing CEFCU's Mark.  (Id. ¶¶ 5, 40; Dkt. No. 48-5, FAC, Ex. D.) On March 23, 2018, CEFCU filed a motion for leave to amend its cancellation petition to add its alleged common law mark of "NOT A BANK. BETTER" ("CEFCU Common Law Mark") against SDCCU.  (Dkt. No. 48, FAC ¶ 14.)

The FAC alleges that the CEFCU Mark is, in fact, more similar to each of the Third Party Marks than it is to the SDCCU Mark.  (Id. ¶ 7.)  Therefore, if CEFCU believes that the scope of protection for its mark is broad enough to encompass the SDCCU Mark, CEFCU materially misrepresented to the USPTO that the CEFCU Mark was not confusingly similar to any of the Third-Party Marks.  (Id.)  On the other hand, if CEFCU believes that its mark was not confusingly similar to any of the Third-Party Marks, the CEFCU Mark cannot be broad enough to encompass the SDCCU Mark.  (Id.) In either case, CEFCU's cancellation action and threat of lawsuit are objectively baseless and brought with the subjective intent to harm SDCCU.  (Id.)  SDCCU asserts it has a reasonable apprehension that CEFCU will file a lawsuit against it alleging trademark infringement.  (Id. ¶ 47.)

In the amended complaint, Plaintiff adds an allegation that CEFCU uses its Marks with the "circle-R" designation to convey to the public and consumers that the CEFCU Mark and CEFCU Common Law Mark are lawfully registered trademarks with the USPTO, even though the CEFCU Mark was falsely and/or fraudulently registered, and the Common Law Mark is not registered with the USPTO. (Id. ¶¶ 50, 67, 103.)

---

[2] Citizens Equity First Credit Union v. San Diego Cnty. Credit Union, Cancellation No. 92066165.

4

Defendant moves to dismiss the first four causes of action for lack of subject matter jurisdiction arguing Plaintiff has not asserted a justiciable claim for alleged infringement under the Declaratory Judgment Act ("DJA") and discretionary dismissal under Rule 57. (Dkt. No. 40.) Defendant additionally moves to dismiss the fifth and sixth causes of action for failure to state a claim based on the new allegations.

## A. Motion to Dismiss DJA Causes of Action for Lack of Subject Matter Jurisdiction

In its motion, Defendant seeks dismissal of the first four causes of action for declaratory relief for lack of an actual controversy because the FAC allegations are "fundamentally inconsistent with its prayers for declaratory relief." (Dkt. No. 49-1 at 17.) Specifically, Defendant claims that SDCCU, in its prior briefing, persuaded the Court that CEFCU had damaged SDCCU's business by "stifling SDCCU's ability to freely use and/or expand its use of the SDCCU Mark" but now alleges, in the FAC, that "in response to CEFCU's use and registration of the CEFCU Mark, SDCCU increased its use of the SDCCU Mark on corresponding marketing materials and relating advertising spend (sic)." (Dkt. No. 48, FAC ¶ 107.) Therefore, the new allegation that SDCCU increased its use of the SDCCU mark is inconsistent with it being in real and reasonable apprehension of suit for infringement. Defendant further argues that the Court should use its discretion under Rule 57[3] by considering the Brillhart[4] factors and grant dismissal of the DJA claims.

_____

[3] Defendant has not provided any caselaw and the Court is unaware of any authority on whether a party may move for dismissal under Rule 57, which merely states that the Federal Rules of Civil Procedure govern a declaratory judgment action under 28 U.S.C. § 2201. See Fed. R. Civ. P. 57. The Advisory Committee Notes also do not provide support. To the extent Defendant argues that dismissal is warranted under the Brillhart factors as they are to be considered when the Court determines whether a plaintiff had a real and reasonable apprehension of fear that it will be subject to litigation, the Court will consider Defendant's argument.

[4] Brillhart v. Excess Inc. Co., 316 U.S. 491 (1942).

5

In response, Plaintiff argues that the allegations concerning declaratory relief claims have not been amended, (Dkt. No. 52 at 8), and the law of the case doctrine precludes CEFCU from re-litigating the declaratory relief claims. Moreover, SDCCU argues that its continued use of the SDCCU Mark provides more support for its real and reasonable apprehension of being sued for infringement and not less, citing Societe de Conditionnement en Aluminium v. Hunter Eng'g Co., Inc., 655 F.2d 938, 944 (9th Cir. 1981) (showing of apprehension "need not be substantial" if an allegedly infringing mark is in use). Next, it claims its arguments are not inconsistent, that is, while SDCCU has developed a real and reasonable apprehension of being sued, it also disagrees with the allegations in the petition for cancellation and further asserts that CEFCU's trademarks are invalid and not-infringed. Third, SDCCU's allegations clarify that CEFCU's fraudulent registration of the CEFCU Mark caused damage to SDCCU by stifling SDCCU's business because it was forced to expend resources to address CEFCU's use of its fraudulently registered mark in the California market instead of using those resources in the regular course of business.

"The law-of-the-case doctrine generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Askins v. U.S. Dep't of Homeland Sec., 899 F.3d 1035, 1042 (9th Cir. 2018) (quoting Musacchio v. United States, 136 S. Ct. 709, 716 (2016)). But a court may exercise its discretion and decline to apply the law of the case if "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." Id. (quoting United States v. Cuddy, 147 F.3d 1111, 1114 (9th Cir. 1998)). But when a plaintiff has filed an amended complaint, the law of the case doctrine does not apply because the amended complaint is a new complaint which may include additional facts and claims that are different from the

original complaint requiring a new determination by the court. <u>Id.</u> at 1043. If "the district court determines the amended complaint is substantially the same as the initial complaint, the district court is free to follow the same reasoning . . . ." <u>Id.</u>

In <u>Askins</u>, the Ninth Circuit held that the district court erred by dismissing the first amended complaint based on the law of the case doctrine without addressing the merits of the government's motion to dismiss because the amended complaint included facts and claims that were different from the original complaint. <u>Id.</u> at 1043 ("The amended complaint is a new complaint, entitling the plaintiff to judgment on the complaint's own merits; we do not ask whether the plaintiff is 'precluded' or 'barred' by the prior ruling.")

In this case, because Plaintiff filed a FAC, the law of the case doctrine does not apply. <u>See id.</u> Nonetheless, Plaintiff argues and the Court notes that the DJA allegations in the FAC and the initial Complaint are the same. In its prior order, the Court conducted a careful and detailed analysis on whether it had subject matter jurisdiction following the Ninth Circuit's "flexible approach" in determining whether there is an actual case or controversy by assessing whether the plaintiff had reasonable apprehension of an infringement suit, <u>Rhoades v. Avon Prods., Inc.</u>, 504 F.3d 1151, 1157-58 (9th Cir. 2007), and then whether the court should exercise its jurisdiction by considering the <u>Brillhart</u> factors which balance "concerns of judicial administration, comity, and fairness to the litigants." (Dkt. No. 47 at 5-14 quoting <u>Chamberlain v. Allstate Ins., Co.</u>, 931 F.2d 1361, 1367 (9th Cir. 1991)). The Court concluded that Plaintiff had demonstrated it had a real and reasonable apprehension that it would be subject to an infringement suit and the Court exercised its jurisdiction over the DJA claims after considering the <u>Brillhart</u> factors. (Dkt. No. 47 at 13-14.) Because the factual allegations in the FAC are the same as the initial complaint, the Court relies on its reasoning in the prior order.

The Court notes that Defendant raises a single new argument that challenges one new fact alleged in the FAC concerning the § 1120 cause of action to be inconsistent with

the DJA analysis contending that the allegation is "fundamentally inconsistent with its prayers for declaratory relief." (Dkt. No. 49-1 at 17.) Specifically, Defendant claims that SDCCU, in its prior briefing, persuaded the Court that CEFCU had damaged SDCCU's business by "stifling SDCCU's ability to freely use and/or expand its use of the SDCCU Mark" but now alleges, in the FAC, that "in response to CEFCU's use and registration of the CEFCU Mark, SDCCU increased its use of the SDCCU Mark on corresponding marketing materials and relating advertising spend (sic)." (Dkt. No. 48, FAC ¶ 107.) Therefore, the new allegation that SDCCU increased its use of the SDCCU mark is inconsistent with it being in real and reasonable apprehension of suit for infringement.

First, the alleged "prayers for declaratory relief" in paragraph 107 relates to the harm SDCCU incurred based on the cause of action for false or fraudulent trademark registration under 15 U.S.C. § 1120, not DJA claims. To the extent it relates to the DJA claims, Plaintiff has not demonstrated, by legal authority that the "prayers for declaratory relief" are considered in addressing whether SDCCU had a real and reasonable apprehension that it would be subject to a suit for infringement for purposes of subject matter jurisdiction. Instead, Ninth Circuit law requires that the Court look at whether "the plaintiff has a real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product." See Rhoades v. Avon Prods., Inc., 504 F.3d 1151, 1157 (9th Cir. 2007). In its ruling, the Court focused on the allegations in the petition for cancellation, the amended petition for cancellation and the initial disclosures and determined they alleged the elements for a cause of action for trademark infringement. (Dkt. No. 47 at 13.) CEFCU has failed to demonstrate a nexus or relationship between SDCCU's increased use of its Mark and SDCCU's real and reasonable apprehension of suit for infringement.

Moreover, Defendant argues that under Rule 57, the Brillhart factors are to be considered by the Court to address whether a special statutory proceeding requires

dismissal of this DJA case, and based on the pending petition for cancellation proceeding, the Court should dismiss these claims. However, the Court already addressed the <u>Brillhart</u> factors in its prior order concluding that this declaratory action is preferable over the TTAB action in addressing all issues between the parties and the Court exercised its jurisdiction over the case. (Dkt. No. 47 at 14.) Defendant has not presented any reasons for the Court to alter its prior ruling.

Accordingly, because the facts on the first four causes of action for declaratory judgment have not been amended, the Court relies on its prior analysis and ruling and DENIES Defendant's motion to dismiss the first four causes of action under the DJA. <u>See</u> <u>Askins</u>, 899 F.3d at 1043.

## B. Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. <u>See</u> <u>Balistreri v. Pacifica Police Dep't.</u>, 901 F.2d 696, 699 (9th Cir. 1990). Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

### 1. Fifth Cause of Action – 15 U.S.C. § 1120

Defendant moves to dismiss the fifth cause of action for false or fraudulent trademark registration for several reasons. First, it argues SDCCU failed to allege facts to show that CEFCU made any false assertion concerning "use in commerce" in its Application for the '993 Registration. Second, SDCCU lacks standing to assert purported third-party rights against the '993 Registration and does not even allege any invasion of such rights. Third, the alleged injuries claimed by SDCCU are not a "proximate" result of the '993 Registration, and fourth, the litigation defense costs are not cognizable "damages" under 15 U.S.C. § 1120 which was already ruled on by the Court. Plaintiff disagrees with Defendant's arguments.

Under the Lanham Act,

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

15 U.S.C. § 1120.

The FAC alleges that on September 1, 2010, CEFCU filed a declaration from its Vice-President, Susan K. Yoder, with the USPTO during the registration of the CEFCU Mark, asserting that the CEFCU Mark was "used in commerce" or "interstate commerce" as of February 5, 2007 with the intent to deceive the USPTO in order to advance

CEFCU's Mark registration.  (Dkt. No. 48, FAC ¶¶ 37, 100.)  But prior to June 2011, CEFCU did not direct its advertising using its Mark outside of the Illinois market.  (Id. ¶ 36.)  In addition, Plaintiff alleges that CEFCU falsely stated that its Mark would not likely cause consumer confusion with respect to pre-existing marks of which it was aware including Third Party Marks such as the "IT'S NOT A BANK" mark of Warren Federal Credit Union, "BETTER THAN A BANK" mark of ABNB Federal Credit Union and "NOT A BANK-BETTER!" mark of United 1st Federal Credit Union.  (Id. ¶¶ 34, 101.)  The false assertion was made with the intent to deceive the USPTO so that its Mark would advance to registration.  (Id. ¶ 101.)  CEFCU's Mark would have not advanced to registration if CEFCU had not declared that the CEFCU Mark would not likely cause consumer confusion concerning pre-existing marks for credit union services.  (Id.)  On information and belief, the false statements in the declaration filed with the USPTO were willful and meant to deceive and constitute fraud.  (Id. ¶ 102.)  The FAC also added an allegation that CEFCU uses the CEFCU Mark with a "circle-R" designation stating to consumers that the CEFCU Mark is a registered trademark even though it was fraudulently and/or falsely registered.  (Dkt. No. 48, FAC ¶¶ 103-107.)

Defendant first argues that Plaintiff's allegation concerning CEFCU's "use in commerce" is a "term of art" as defined under 15 U.S.C. § 1127,[5] which requires that the mark is used in association with *services* that are "rendered in commerce" and SDCCU fails to allege that CEFCU services identified by the CEFCU Mark were not "rendered in commerce" as of February 5, 2007.  Moreover, SDCCU's allegation that CEFCU did not direct its advertising using the CEFCU Mark outside the Illinois market prior to June

_____

[5] "The word 'commerce' means all commerce which may lawfully be regulated by Congress. . . . For purposes of this chapter, a mark shall be deemed to be in use in commerce--. . . on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services."  15 U.S.C. § 1127.

2011 does not support the conclusion that the CEFCU Mark was not in "use in commerce" prior to 2011. Simply put, Defendant argues that Plaintiff failed to allege facts which support its theory that CEFCU's claimed first "use in commerce" date was false. The Court disagrees.

Based on the facts alleged in the FAC, Plaintiff has sufficiently alleged a false statement in the '993 Registration Application claiming that CEFCU was using its Mark in commerce as of February 5, 2007, when in fact it was not until June 2011 that CEFCU directed its advertising outside the Illinois market. Whether CEFCU in fact was using its Mark in commerce as of February 5, 2007, based on 15 U.S.C. § 1127, is a question of fact not proper on a motion to dismiss.

Moreover, to the extent Defendant's argument is addressing the merits of Plaintiff's claim, they are improper on a motion to dismiss. On this argument, Defendant seeks judicial notice that CEFCU is a federal regulated credit union and its deposits are insured by the National Credit Union Administration. (Dkt. No. 49-1 at 12.) On a motion to dismiss, the Court only considers the allegations in the FAC and "accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff." See al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009). The Court denies CEFCU's request for judicial notice.

Next, Defendant challenges Plaintiff's allegations that CEFCU falsely stated that its Mark would not likely cause consumer confusion with respect to pre-existing marks of which it was aware when CEFCU applied for the Mark. According to CEFCU, SDCCU cannot rely on the existence of "third party marks" to attack the validity of the CEFCU '993 Registration where there are no allegations that any of the third-party users had any grounds for objecting to the '993 Registration in 2010. (Dkt. No. 49-1 at 13.) Further, Defendant argues that as a matter of law, a third party's prior use of a trademark is not a defense in an infringement action. Plaintiff counters that it is not asserting the

third party's prior marks as a defense to an infringement claim but relying on these facts to support the claim that CEFCU fraudulently obtained its registration.

At this stage on a motion to dismiss, the Court concludes that Plaintiff has sufficiently alleged facts to support a claim under 15 U.S.C. § 1120. Plaintiff relies on the existence of Third Party Marks similar to CEFCU's prior to the '993 Registration as factual support for an allegation that Defendant made a false statement on its trademark registration application. Plaintiff is not asserting purported third-party rights against the '993 Registration. Thus, allegations concerning the existence of third party marks do not warrant dismissal of the claim.

Third, Defendant argues that the "new" alleged damages are not a "proximate" result of the challenged '993 Registration because of the six year gap in time between the '993 Registration which issued on May 3, 2011 and allegations of injury that began around May 17, 2017, when SDCCU became aware of the CEFCU Mark when the petition for cancellation was filed. Moreover, it argues that CEFCU's first use of its Mark antedates the first use date claimed in SDCCU's '596 Registration so that it had a right to seek cancellation of the '596 Registration irrespective of the '993 Registration. Plaintiff argues it seeks damages based on SDCCU's marketing expenses and diverted employee time which are directly related to "counteracting the effect of CEFCU's fraudulent use and registration of the CEFCU Mark" and courts have held that a lapse in time between the registration issuance and the alleged injury does not bar damages. (Dkt. No. 52 at 23.)

The FAC alleges that CEFCU's fraudulent conduct in obtaining a false registration has damaged SDCCU's business. (Dkt. No. 48, FAC ¶¶ 103-107.) "[I]n response to CEFCU's use and registration of the CEFCU Mark, SDCCU has conducted, in whole or in part, many marketing meetings among SDCCU's executives . . . as well as other marketing employees, for the purpose of discussing strategies for countering CEFCU's

use and registration of the CEFCU Mark. These meetings consumed employee time that otherwise would have been spent on other matters." (Id. ¶ 105.) Moreover, SDCCU has increased its use of its Mark on marketing materials and related marketing spending and incurred expenses that it would not have otherwise incurred but for CEFCU's false and/or fraudulent registration of the CEFCU Mark." (Id. ¶ 107.)

First, a gap between an alleged fraudulent registration of a mark and claimed injuries are not automatically barred but a plaintiff must demonstrate the harm is proximately caused by the fraudulent registration. See MIH Allegro BV v. Fang, Case No. LA CV 14-6510 JAK (ASx), 2015 WL 12655399, at *8 (C.D. Cal. Jan. 12, 2015) (§ 1120 requires a "direct causal relationship between the registration itself and any alleged injury" and plaintiff adequately plead injury even though the defendant argued that plaintiff did not use the mark at the time of its registration); Maker's Mark Distillery, Inc. v. Diageo N. America, Inc., No. 3:03cv93-H, 2007 WL 4292392, *3 (W.D. Ky. Dec. 6, 2007) (not persuaded by decisions that hold that "later enforcement of a fraudulent registration could never be the proximate cause of injury to a party"); San Juan Prod., Inc. v. San Juan Pools of Kansas, Inc., 849 F.2d 468, 473 (10th Cir. 1988) (injury under § 1120 damages must be a proximate result of the false or fraudulent registration).

Next, Defendant argues that irrespective of the alleged fraudulent registration, it had a right to seek cancellation based on its first use rights over SDCCU's trademark rights; therefore, the damages it seeks for increased marketing expenses and diverted employee time, are not recoverable under § 1120 because they are not proximately caused by the alleged fraudulent registration.

CEFCU's argument requires an inquiry into the merits of SDCCU's alleged non-infringement DJA claims and are not proper on a motion to dismiss. In Maker's Mark Distillery, Inc., a case cited by Plaintiff and similar to the facts in this case, the plaintiff moved to dismiss the counterclaim under § 1120 based on the impossibility that the

fraudulent registration that occurred nineteen years ago proximately caused the defendant injuries. 2007 WL 4292392 at *1. The court denied dismissal of the case as premature because both the plaintiff's registration and its underlying trademark rights were at issue. Id. at *4. The court distinguished the Gilbert/Robinson[6] line of cases, where the validity of a § 1120 claim was made after determining that the party had a valid trademark separate from its fraudulent trademark registration. Id. Similarly, here, Plaintiff challenges not only CEFCU's registration of the CEFCU Mark but also its trademark rights. Therefore, it is premature to make such a ruling on a motion to dismiss. Accordingly, the Court DENIES Defendant's motion to dismiss based on the alleged damages concerning diverted staff time and additional marketing expenses.

Finally, the FAC seeks attorney's fees and costs as damages under § 1120. (Dkt. No. 48, FAC ¶ 120.) However, the Court already ruled and Plaintiff recognizes that attorney's fees and costs are not recoverable as damages under § 120 and does not oppose Defendant's motion on these damages sought. Accordingly, the Court GRANTS Defendant's motion to dismiss the relief sought for attorney's fees and costs.

In sum, the Court DENIES Defendant's motion to dismiss the 15 U.S.C. § 1120 cause of action and GRANTS the motion solely as to the damages sought for attorney's fees and costs.

### 2. Sixth Cause of Action – Unfair Competition, 15 U.S.C. § 1125

Defendant moves to dismiss the Lanham Act unfair competition claim because the amended allegations that CEFCU's use of the "R" symbol or ® in association with its

---

[6] Gilbert/Robinson, Inc. v. Carrie Beverage–Missouri, Inc., 989 F.2d 985, 991 (8th Cir. 1993), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377 (2014)) (injury was not proximately caused by fraud on the PTO because even though plaintiff provided uncontradicted evidence of prior use and the defendant proved fraud in the registration process, the plaintiff would still have had the same Lanham cause of action for infringement irrespective of the fraudulent registration).

own Marks fall outside of 15 U.S.C. § 1125(a)(1)B).  Plaintiff argues that it has stated a claim under Lanham Act's unfair competition provision because CEFCU improperly used the circle-R designation in connection with its Marks.

The Lanham Act was intended to make "actionable the deceptive and misleading use of marks," and "to protect persons engaged in . . . commerce against unfair competition."  15 U.S.C. § 1127.  Section 43(a) of the Lanham Act provides:

> (1) Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> *(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,*
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (emphasis added).  Though not stated in the FAC, it appears that Plaintiff is asserting a false advertising claim under § 1125(a)(1)(B).

A false advertising claim under Section 43(a) of the Lanham Act requires the following elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and

(5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997); see also Skydive Arizona, Inc. v. Quattrocchi, 673 F.3d 1105, 1110 (9th Cir. 2012). Two different theories of recovery fall under a false advertising claim. "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." Southland, 108 F.3d at 1139; Tiffany Inc. v. eBay Inc., 600 F.3d 93, 112 (2d Cir. 2010) ("A claim of false advertising may be based on at least one of two theories: 'that the challenged advertisement is literally false, i.e., false on its face,' or 'that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers.'"). When a statement is literally false, the second and third elements of actual deception and material are presumed. AECOM Energy & Constr., Inc. v. Ripley, –F. Supp. 3d – 2018 WL 5906172, at *11 (C.D. Cal. Nov. 8, 2018). However, under either theory, the "plaintiff must also demonstrate that the false or misleading representation involved an inherent or material quality of the product." Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 153 n.3 (2d Cir. 2007).

The FAC claims two false representations in advertising. First, it alleges CEFCU uses its service Mark with the circle-R designation stating to consumers and the public that the CEFCU Mark is a registered trademark under the '993 Registration despite the allegation the Registration was falsely and/or fraudulently registered. (Dkt. No. 48, FAC ¶¶ 50, 103, 115.) Second, it also claims that CEFCU also uses the "circle-R" symbol with its Common Law Mark which constitutes a false and/or misleading statement to consumers that the CEFCU Common Law Mark is a registered trademark when, in fact, it is not. (Id. ¶¶ 66, 67, 116.) The FAC asserts that CEFCU uses its Mark and Common Law Mark with the "circle-R" designation to unfairly compete with SDCCU for

17

consumers who desire to purchase financial services from a credit union instead of a bank.  (Id. ¶ 117.)  Using the "circle-R designation on marketing materials and CEFCU's website confuses and deceives consumers as to CEFCU's purported exclusive right to use the CEFCU Mark and/or Common Law Mark."  (Id. ¶ 118.)

Defendant argues that the improper use of the ® symbol next to its Marks cannot assert a claim for false advertising claim under § 1125 because it does not relate to the "nature, characteristics, qualities or geographic origin" of CEFCU's services.  See 15 U.S.C. § 1125.  Plaintiff argues that Defendant misapplies the law and that "it is plausible that a literally false statement is being made when a party appends the ® symbol to a mark that is not federally registered."  (Dkt. No. 52 at 26.)

 Under either theory of literal falsity or misleading/confusing consumers, the plaintiff must also demonstrate that the false or misleading representation involved an inherent or material quality of the product."  Time Warner Cable, Inc., 497 F.3d at 153 n.3; see 15 U.S.C. § 1125(a)(1)(B) (a false advertising claim must "misrepresents[] the nature, characteristics, qualities, or geographic origin of . . . goods, services . . . .").

In support, Defendant cites to a district court case from the Southern District of New York where the court held that on summary judgment, as a matter of law, the Plaintiff's "misuse of the ® symbol is not actionable under § 43(a)(1)(B) of the Lanham Act because the ® symbol, "'in no way' related to an 'inherent quality or characteristic' of its vodka.  Classic Liquor Importers, Ltd. v. Spirits Int'l B.V, 201 F. Supp. 3d 428, 452 (S.D.N.Y. 2016).  There, defendant's counterclaim alleged a false advertising and unfair competition claim for the use of the ® symbol on its vodka bottles, falsely indicating that it had a trademark registration in ROYAL or ROYAL ELITE where the trademark application had not yet developed into a registration.  Relying on Second Circuit authority, it stated "[f]alsity alone does not make a false advertising claim viable; '[u]nder either theory [of falsity], the plaintiff must also demonstrate that the false or

misleading representation involved an inherent or material quality of the product.'" <u>Id.</u> at

(quoting <u>Apotex Inc. v. Acorda Therapeutics, Inc.</u>, 823 F.3d 51, 63 (2d Cir. 2016)

(quoting <u>Time Warner Cable, Inc.</u>, 497 F.3d at 153 n. 3)).

On the other hand, in <u>Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.</u>, 887 F.

Supp. 2d 519 (S.D.N.Y. 2012), the plaintiff brought a false advertising claim for the

defendant's misuse of the ® symbol and the court granted plaintiff's request for

injunctive relief on this claim. <u>Id.</u> at 539-40. The defendant admitted that it continued to

use the ® symbol on promotional materials after its trademark registration had lapsed.

<u>Id.</u> Based on this, the court concluded that the plaintiff had proven that the

advertisements were literally false because the defendant used the ® symbol during the

time when it was untrue. <u>Id.</u> at 540. Unique to the case was that the plaintiff only sought

injunctive relief, not monetary damages. <u>Id.</u> The court granted summary judgment

prohibiting the defendant from misusing the ® symbol in connection with the mark. <u>Id.</u>

The court noted that in an ordinary case, a plaintiff must also show that the advertising

"misrepresented an inherent quality or characteristic of the product" but because the

claim was literally false, then the court may enjoin conduct without regard to the

advertisement's impact on the buying public. <u>Id.</u> at 539.

In <u>Classic Liquor</u>, the court distinguished <u>Perfect Pearl</u> because the plaintiff in

<u>Perfect Pearl</u> only sought injunctive relief, not damages. Moreover, the district court in

<u>Classic Liquor</u>, asserted that to read <u>Perfect Pearl</u> "to suggest that literally false

statements need not pertain to the inherent qualities or characteristics of the good or

service in question would be inconsistent with the Second Circuit case law." <u>Classic</u>

<u>Liquor Importers, Ltd.</u>, 201 F. Supp. 3d at 452.

In support, Plaintiff cites to cases that rely on <u>Southern Snow Mfg. Co. v Snow</u>

<u>Wizard Holdings, Inc.</u>, 829 F. Supp. 2d 437 (E.D. La. 2011), where the plaintiff filed a

trademark infringement suit challenging the validity of the defendant's trademarks

concerning flavors used on snow cones using the ® symbol.  In dicta, the court stated that the "use of the ® symbol makes an affirmative statement that the USPTO has registered the symbol, it is plausible that a literally false statement is being made when a party appends the ® symbol to a mark that is not federally registered. . . So unauthorized use of the ® could perhaps form the basis for making a literally false statement.  Id. at 453.  The Court stated a misuse of the ® symbol "could conceivably encompass a claim that involves an unfair trade practice involving improper use of trademark symbols and the Court is persuaded that it would be legal error to broadly hold otherwise."  Id. at 448.  However, in the case, the plaintiff's claims for improper use of the ® symbol were not based on having attached the ® symbols to unregistered marks but that the defendant obtained the registration by fraudulent assertions made to the USPTO during the application process.  Id. at 453.  The court concluded that the plaintiff's claims would fall under 15 U.S.C. § 1120 for false or fraudulent registration, and not under § 1125.  Id.  The court held that the ® designation on the flavor name was not a "literally false statement because the term was in fact federally registered."  Id.  The court did not address whether the ® designation related to an inherent quality of the product.

Here, Plaintiff's first theory that the use of the ® symbol with the CEFCU Mark presents a false advertising claim because it was fraudulently obtained is foreclosed by the holding in Southern Snow.  Because the CEFCU Mark is registered, it cannot raise a claim for false advertising but a proper claim would be a claim for false or fraudulent registration of a mark under § 1120.  See Southern Snow, 829 F. Supp. 2d at 453 (the ® designation on the flavor name was not a "literally false statement because the term was in fact federally registered.").

Next, the Court dismisses Plaintiff's second false advertising theory that the use of the ® symbol in connection with the CEFCU Common Law Mark, which it claims is not a registered mark with the USPTO.  Plaintiff does not address whether the ® designation

relates to a "nature, characteristics, qualities, or geographic origin" of CEFCU's credit union services.  Instead, it argues that the use of the ® symbol with the CEFCU Common Law Mark is literally false and alleges it has stated a claim for false advertising. However, under either of the two theories for false advertising under § 1125(a), a plaintiff must allege that the false advertising relates to the "nature, characteristic qualities, or geographic origin" of the service.  See Time Warner Cable, Inc., 497 F.3d at 153 n.3.  An ® designation with CEFCU's Common Law Marks, in this case, does not refer to the nature, characteristic, quality or geographic origin of credit union services provided by CEFCU.  See Classic Liquor Importers, Ltd., 201 F. Supp. 3d at 452; see e.g., Optigen, LLC v. Int'l Genetics, Inc., 877 F. Supp. 2d 33, 53 (N.D.N.Y. 2012) (statement where defendant is headquartered does not give rise to a false advertisement claim under the Lanham Act as it does not concern "an inherent or material quality of the product."); Agence France Presse v. Morel, 769 F. Supp. 2d 295, 308 (S.D.N.Y. 2011) (granting motion to dismiss false advertising claim premised on "AFP and Getty's false statements that they were authorized to distribute the images and that Suero was the author" because these misrepresentation did not concern the "the nature, characteristics, qualities, or geographic origin" of the photographs.") (citing Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc., No. 06 Civ. 14212(RMB), 2007 WL 2193964, at *3 (S.D.N.Y. July 27, 2007) ("[A] failure to attribute authorship to Plaintiff does not amount to misrepresentation of the nature, characteristics, qualities, or geographic origin of Defendant's goods.").

The ruling in Perfect Pearl Co., granting injunctive relief on an unfair competition claim based on the alleged misuse of the ® designation, is particular to the facts of its case and is distinguishable because here, SDCCU seeks damages as well as injunctive relief, and is not persuasive.  Moreover, the ruling in Southern Snow, where the court only suggested that the unauthorized use of the ® symbol may constitute an unfair

competition claim, is also not persuasive as the court's statements were dicta and did not rule on whether the ® designation relates to the nature, characteristic or quality of the goods being sold. Here, Plaintiff has not alleged that the ® symbol used in connection with CEFCU's Common Law Mark concerns the "the nature, characteristics, qualities, or geographic origin" of CEFCU's credit union services.

Accordingly, the Court GRANTS Defendant's motion to dismiss the sixth cause of action for a Lanham Act unfair competition claim for failure to state a claim.[7]

### Conclusion

Based on the above, the Court DENIES Defendant's motion to dismiss the first four causes of action seeking declaratory relief, DENIES dismissal of the fifth cause of action for false/fraudulent registration of trademark under 15 U.S.C. § 1120 but GRANTS dismissal of the attorney's fees and costs sought under 15 U.S.C. § 1120, and GRANTS dismissal of the the sixth cause of action for unfair competition under 15 U.S.C. § 1125.

IT IS SO ORDERED.

Dated: February 5, 2019

Hon. Gonzalo P. Curiel
United States District Judge

---

[7] The Court already granted dismissal on the other allegations in the sixth cause of action, (Dkt. No. 48, FAC ¶¶ 109-114), that have not been amended concerning alleged misrepresentations made to the USPTO when CEFCU applied for its trademark registration. (Dkt. No. 47 at 21-26.)