UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COUNTY CREDIT UNION,<br><br>    Plaintiff,<br><br>v.<br><br>CITIZENS EQUITY FIRST CREDIT UNION,<br><br>    Defendant. | Case No.: 18cv967-GPC(MSB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING PLAINTIFF'S REQUEST FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**<br><br>**[Dkt. No. 118.]** |

Before the Court is Defendant's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 118.) Plaintiff filed an opposition on March 13, 2020. (Dkt. No. 120.) Defendant replied on March 20, 2020. (Dkt. No. 123.) Based on the reasoning below, the Court GRANTS Defendant's motion for judgment on the pleadings and GRANTS Plaintiff's request for leave to file a second amended complaint.

**Procedural Background**

On May 16, 2018, Plaintiff San Diego County Credit Union ("SDCCU") filed a complaint against Defendant Citizens Equity First Credit Union ("CEFCU") alleging the

1

following causes of action: 1) declaratory judgment of non-infringement of federally registered trademark for "CEFCU. NOT A BANK. BETTER."; 2) declaratory judgment of non-infringement of common law mark "NOT A BANK. BETTER."; 3) declaratory judgment for invalidity of federally registered trademark for "CEFCU. NOT A BANK. BETTER."; 4) declaratory judgment for invalidity of common law mark "NOT A BANK. BETTER."; 5) false or fraudulent trademark registration under 15 U.S.C. § 1120; and 6) unfair competition under 15 U.S.C. § 1125.[1] (Dkt. No. 1. Compl, ¶¶ 58-98.)

On July 31, 2018, the Court denied Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2). (Dkt. No. 39.) On October 2, 2018, the Court denied Defendant's second motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) on the first four causes of action for declaratory judgment, and granted Defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6) on the fifth and sixth causes of action with leave to amend. (Dkt. No. 47.)

On October 12, 2018, Plaintiff filed the operative first amended complaint, ("FAC") alleging the same six causes of action with additional factual allegations. (Dkt. No. 48, FAC.) On February 5, 2019, the Court denied Defendant's third motion to dismiss for lack of subject matter jurisdiction, and granted in part and denied in part Defendant's motion to dismiss for failure to state a claim. (Dkt. No. 55.) Specifically, the Court denied dismissal of the fifth cause of action for false/fraudulent registration of trademark under 15 U.S.C. § 1120 but granted dismissal of the attorney's fees and costs sought under 15 U.S.C. § 1120, and granted dismissal of the sixth cause of action for unfair competition under 15 U.S.C. § 1125. On the FAC, the first five causes of action

---

[1] In response to a motion to dismiss, Plaintiff agreed to voluntarily dismiss the seventh and eighth causes of action alleging unfair competition under California law. (Dkt. No. 47 at 4.)

remain. According to the case management order, fact discovery was completed on December 30, 2019 and the expert discovery deadline is April 20, 2020. (Dkt. No. 68.)

Defendant makes its fourth attempt seeking dismissal based on the allegations in the FAC and moves for judgment on the pleadings on the fifth cause of action for false or fraudulent trademark registration under 15 U.S.C. § 1120 as barred by the statute of limitations. The motion is fully briefed.

## Factual Background

SDCCU owns over 40 federally registered trademarks in connection with its credit union services, including U.S. Trademark Registration No. 4,560,596 for "IT'S NOT BIG BANK BANKING. IT'S BETTER" (the "SDCCU Mark") which issued on July 1, 2014. (Dkt. No. 48, FAC ¶ 25; Dkt. No. 48-2, FAC, Ex. A.) CEFCU owns U.S. Trademark Registration No. 3,952,993 for "CEFCU. NOT A BANK. BETTER" (the "CEFCU Mark") which issued on May 3, 2011. (Dkt. No. 48, FAC ¶ 33; Dkt. No. 48-3, FAC, Ex. B.) CEFCU also allegedly uses the common law mark "NOT A BANK. BETTER". (Dkt. No. 48, FAC ¶ 14.) Prior to filing the trademark application for the CEFCU Mark, CEFCU conducted a trademark search report and, on information and belief, learned that several third-party credit unions already used trademarks similar to the CEFCU Mark such as "NOT A BANK – BETTER!", "BETTER THAN A BANK", and "IT'S NOT A BANK" ("Third Party Marks"). (Dkt. No. 48, FAC ¶¶ 3, 34.)

SDCCU and CEFCU are both large credit unions. (*Id.* ¶ 2.) SDCCU's customers are primarily located in Southern California while CEFCU's customers are primarily located in Peoria, Illinois and Northern California. (*Id.*) At the end of 2008, CEFCU purchased Valley Credit Union in Northern California but did not direct its marketing bearing the CEFCU Mark or CEFCU's Common Law Mark in connection with credit union services outside the Illinois market until June 2011. (*Id.* ¶ 31.) In June 2011,

CEFCU started using the CEFCU Mark in connection with marketing campaigns in the Illinois and California markets. (*Id.* ¶ 32.)

In early 2016, a CEFCU employee saw a billboard in San Diego, CA containing the SDCCU Mark used to market credit union services and notified CEFCU managers in March 2016. (*Id.* ¶ 38.) On May 17, 2017, CEFCU filed a petition for cancellation[2] of the '596 Trademark Registration No. for the SDCCU Mark with the U.S. Patent and Trademark Office's ("USPTO") Trademark Trial and Appeal Board ("TTAB") claiming the SDCCU Mark is likely to cause confusion or to cause mistake or to deceive consumers when viewing CEFCU's Mark. (Id. ¶¶ 5, 40; Dkt. No. 48-5, FAC, Ex. D.) On March 23, 2018, CEFCU filed a motion for leave to amend its cancellation petition to add its alleged common law mark of "NOT A BANK. BETTER" ("CEFCU Common Law Mark") against SDCCU. (Dkt. No. 48, FAC ¶ 14.)

The FAC alleges that the CEFCU Mark is, in fact, more similar to each of the Third Party Marks than it is to the SDCCU Mark. (*Id.* ¶ 7.) Therefore, if CEFCU believes that the scope of protection for its mark is broad enough to encompass the SDCCU Mark, CEFCU materially misrepresented to the USPTO that the CEFCU Mark was not confusingly similar to any of the Third-Party Marks. (Id.) On the other hand, if CEFCU believes that its mark was not confusingly similar to any of the Third-Party Marks, the CEFCU Mark cannot be broad enough to encompass the SDCCU Mark. (*Id.*) In either case, CEFCU's cancellation action and threat of lawsuit are objectively baseless and brought with the subjective intent to harm SDCCU. (*Id.*)

On the claim for false or fraudulent trademark registration, the FAC alleges that on September 1, 2010, CEFCU filed a declaration from its Vice-President, Susan K. Yoder, with the USPTO during the registration of the CEFCU Mark, asserting that the CEFCU

---

[2] *Citizens Equity First Credit Union v. San Diego Cnty. Credit Union,* Cancellation No. 92066165.

4

Mark was "used in commerce" or "interstate commerce" as of February 5, 2007 with the intent to deceive the USPTO in order to advance CEFCU's Mark registration. (*Id.* ¶¶ 37, 100.) But prior to June 2011, CEFCU did not direct its advertising using its Mark outside of the Illinois market. (*Id.* ¶ 36.) In addition, Plaintiff alleges that CEFCU falsely stated that its Mark would not likely cause consumer confusion with respect to pre-existing marks of which it was aware including Third Party Marks such as the "IT'S NOT A BANK" mark of Warren Federal Credit Union, "BETTER THAN A BANK" mark of ABNB Federal Credit Union and "NOT A BANK-BETTER!" mark of United 1st Federal Credit Union. *(Id.* ¶¶ 34, 101.) The false assertion was made with the intent to deceive the USPTO so that its Mark would advance to registration. (*Id.* ¶ 101.) CEFCU's Mark would not have advanced to registration if CEFCU had not declared that the CEFCU Mark would not likely cause consumer confusion concerning pre-existing marks for credit union services. (*Id.*) On information and belief, the false statements in the declaration filed with the USPTO were willful and meant to deceive and constitute fraud. (*Id.* ¶ 102.) Finally, Plaintiff alleges that CEFCU uses its Marks with the "circle-R" designation to convey to the public and consumers that the CEFCU Mark and CEFCU Common Law Mark are lawfully registered trademarks with the USPTO, even though the CEFCU Mark was falsely and/or fraudulently registered, and the Common Law Mark is not registered with the USPTO. (*Id.* ¶¶ 50, 67, 103.)

## Discussion

**A.  Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure ("Rule") 12(c) allows parties to move for judgment on the pleadings after the pleadings have been closed but prior to trial. Fed. R. Civ. P. 12(c). The standard for determining a Rule 12(c) motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1053 & n.4 (9th Cir. 2011)

(the same standard of review applies to motions brought under Rule 12(c) as motions brought under Rule 12(b)(6)). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The Court must accept as true and view the facts in the light most favorable to the non-moving party. *Id.* A court must not consider matters beyond the pleadings as such a proceeding must be treated as a motion for summary judgment. *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

Defendant moves for judgment on the pleading on the cause of action for false and/or fraudulent trademark registration under 15 U.S.C. § 1120[3] as barred by the three-year statute of limitations. It argues that SDCCU had constructive notice of the alleged fraudulent registration on May 3, 2011, the trademark registration date. Defendant also contends that SDCCU failed to plead facts to support the delayed discovery rule. In response, Plaintiff argues under California's discovery rule, the statute of limitations did not accrue until May 17, 2017 at the earliest which is when CEFCU filed its cancellation petition and when SDCCU claims it became aware of the CEFCU Mark. SDCCU claims it had no actual or constructive notice of its claim because the alleged fraudulent conduct occurred outside of public view and it only obtained such confidential and non-public information during discovery of the cancellation action. Alternatively, if the Court finds that the pleadings are not specific enough, Plaintiff seeks leave to file a second amended complaint to correct the deficiency.

---

[3] 15 U.S.C. § 1120 states,
> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

15 U.S.C. § 1120.

"The Lanham Act contains no express statute of limitations and the general rule is that when a federal statute provides no limitations for suits, the court must look to the state statute of limitations for analogous types of actions. A claim for fraud under the Lanham Act conforms to this general rule." *Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 143 (3d Cir. 1997) (citing *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1395 (9th Cir. 1993) (applying Oregon's two-year limitation period)). The parties do not dispute that California's three-year statute of limitations for fraud applies on this cause of action. *See* Cal. Code Civ. Proc. § 338(d). Under section 338(d), "[t]he cause of action . . . is not deemed to have accrued until the *discovery*, by the aggrieved party, of the facts constituting the fraud or mistake." *Id*. (emphasis added). As a general matter, "a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" *Fox v. Ethicon Endo-Surgery, Inc*., 35 Cal. 4th 797, 806 (2005) (quoting *Norgart v. Upjohn Co.,* 21 Cal. 4th 383, 397 (1999)). However, the discovery rule "delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Fox*, 35 Cal. 4th at 807; *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988) (the statute of limitations begins once "the plaintiff has notice or information of circumstances to put a reasonable person on inquiry . . . ."). In other words, the statute of limitations begins to run when a plaintiff "suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly*, 44 Cal. 3d at 1110; *Norgart*, 21 Cal. 4th at 397 ("the plaintiff discovers the cause of action when he at least suspects a factual basis . . . for its elements"). Once on inquiry notice, the plaintiff has an obligation to discover facts and cannot sit on his rights but must go find them himself. *Jolly,* 44 Cal. 3d at 1111.

"In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and

manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'" *Fox*, 35 Cal. 4th at 808 (quoting *McKelvey v. Boeing N. American, Inc.,* 74 Cal. App. 4th 151, 160 (1999) (emphasis in original)). The plaintiff "must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light." *Id.* at 808-09.

"Although the heightened pleading standard of the discovery rule seems to conflict with the liberal federal notice pleading standard, the Ninth Circuit has unequivocally held that in order to rely on a defense to a statute of limitations challenge provided by state law, a plaintiff must meet the pleading requirements of that state law." *N. Cnty. Transit Dist. v. Atlantic Richfield Co*., Case No. 06cv0213 DMS (BLM), 2006 WL 8455571 (S.D. Cal. Sept. 27, 2006) (citing *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir. 1995) ("California law makes clear that a plaintiff must allege specific facts establishing the applicability of the discovery-rule exception.")); s*ee also Hip Hop Beverage Corporation v. Michaux*, 729 Fed. App'x 599, 600 (9th Cir. 2018) (affirming grant of dismissal for judgment on the pleadings for failing to provide specificity necessary to invoke the delayed discovery rule and with prejudice because plaintiff conceded at oral argument that it would not be able to add much to the complaint if granted leave to amend).

Here, the FAC alleges that CEFCU procured the '993 Registration by a "false or fraudulent declaration" in a declaration filed on September 1, 2010. (Dkt. No. 48, FAC ¶ 37.) In the declaration, CEFCU stated that the CEFCU Mark was used in interstate commerce as of February 5, 2007, when in fact, CEFCU did not direct its advertising using its mark outside the Illinois market prior to June 2011. (*Id.*) Also, prior to filing the application, CEFCU commissioned a trademark search report to identify trademarks

for credit union services similar to the mark "NOT A BANK. BETTER." (*Id.* ¶ 34.) CEFCU falsely stated that its Mark would not likely cause consumer confusion with respect to pre-existing marks of which it was aware including Third Party Marks. (*Id.*) SDCCU first became aware of the CEFCU Mark when CEFCU filed its petition for cancellation of SDCCU's Mark on May 17, 2017 even though there was not a single instance of actual confusion between the marks. (*Id.* ¶¶ 40, 48.)

    Defendant argues that the statute of limitations of a false or fraudulent registration claim accrues at the time the registration issued by operation of 15 U.S.C. § 1072[4] and the automatic effects of USPTO registrations under 15 U.S.C. §§ 1057(b) and (c)[5] citing to "6 Louis Altman & Malla Pollack, Callmann on Unfair Competition, Trademarks &

---

[4] 15 U.S.C. § 1072 provides,
> Registration of a mark on the principal register provided by this chapter or under the Act of March 3, 1881, or the Act of February 20, 1905, shall be constructive notice of the registrant's claim of ownership thereof.

15 U.S.C. § 1072.

[5] 15 U.S.C. §§ 1057(b) and (c) states,
> **(b) Certificate as prima facie evidence**
> A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.
> **(c) Application to register mark considered constructive use**
> Contingent on the registration of a mark on the principal register provided by this chapter, the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect, on or in connection with the goods or services specified in the registration against any other person except for a person whose mark has not been abandoned and who, prior to such filing--(1) has used the mark; (2) has filed an application to register the mark which is pending or has resulted in registration of the mark; or (3) has filed a foreign application to register the mark on the basis of which he or she has acquired a right of priority, and timely files an application under section 1126(d) of this title to register the mark which is pending or has resulted in registration of the mark.

15 U.S.C. §§ 1057(b), (c).

Monopolies § 23:32 (4th ed. 2019) (citing *OAG*[6] and *Ritz Hotel, Ltd. v. Shen Mfg. Co.*, *Inc.*, 2009 WL 1119496 (E.D. Pa. 2009))." (Dkt. No. 118-1 at 10.) CEFCU further asserts that SDCCU failed to plead allegations to support the application of the discovery rule. Plaintiff responds that the fraudulent trademark registration cause of action did not accrue until May 17, 2017 at the earliest as alleged in the FAC. In argument, Plaintiff asserts that the fraudulent acts occurred entirely outside of public view and were only learned by SDCCU through discovery in the cancellation action.

First, Defendant's initial argument that a cause of action for fraudulent trademark registration accrues at the time of registration is correct but fails to take into account the discovery rule. Similarly, the cases Defendant cites do not address the applicability of the California discovery rules. In *Ritz Hotel*, the relevant Pennsylvania fraud statute of limitations[7] did not include a discovery rule and there, the district court held that the statute of limitations ran two years from the date of registration when the defendant was on constructive notice of the fraudulent registration. *Ritz Hotel, Ltd.,* 2009 WL 1119496 at *3. Meanwhile, in *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1395-96 (9th Cir. 2011), the Ninth Circuit concluded that the two-year statute of limitations under Oregon law had expired on a 15 U.S.C. § 1120 counterclaim for fraudulent registration since the limitations period began upon the false registration and not when the defendant was obligated to defend against the trademark infringement claim. *Id.* at 1095. CEFCU notes that Oregon's fraud statute of limitations has a similar discovery rule as California; however, the discovery rule was not invoked in the case because it appears that the defendant knew about the registration at the time it happened. Because the discovery rule

---

[6] *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385 (9th Cir. 2011).
[7] A two year statute of limitations applies to "(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter." 42 Pa. C.S.A. § 5524(7).

was not applied or discussed in these two cases, they do not assist the Court in addressing whether the discovery rule has been sufficiently plead.

In its opposition, Plaintiff presents arguments why, by implication, the FAC has sufficiently plead that the discovery rule should delay accrual of the statute of limitations. Plaintiff further claims the FAC clearly satisfies the elements of the discovery rule by having plead the time and manner of discovery and the inability to have made earlier discovery despite reasonable diligence because "SDCCU did not and could not have known about CEFCU's pre-filing search report and subjective beliefs as to its rights to use its own trademark application that form the bases of SDCCU's fraudulent registration claim" (Dkt. No. 120 at 21-22), but Plaintiff does not cite where in the FAC such allegations exist. In fact, the FAC fails to make these allegations. The FAC only alleges that SDCCU first discovered the CEFCU Mark after May 17, 2017 when the petition for cancellation was filed. *Fox* requires that the elements of the discovery rule be affirmatively and specifically plead. *See Fox*, 35 Cal. 4th at 808. The FAC fails to allege the time and manner of discovery as well as the inability to have made the discovery earlier despite reasonable diligence. Therefore, the Court GRANTS Defendant's motion for judgment on the pleadings on the claim for false or fraudulent trademark registration under 15 U.S.C. § 1120 as time barred.[8]

///

---

[8] In its opposition, SDCCU also argues that CEFCU is relitigating arguments already rejected by the Court in a prior order, (Dkt. No. 55), and the motion for judgment on the pleadings is untimely as it seeks to avoid facts uncovered during discovery. (Dkt. No. 120 at 14-15.) The Court disagrees. Previously, the Court concluded that the plaintiff need only allege that harm be proximately caused by the fraudulent registration and a six-year time gap between an alleged fraudulent registration of a mark and claimed injuries are not automatically barred. (Dkt. No. 55 at 14.) The Court did not rule on whether Plaintiff had sufficiently plead the discovery rule in the FAC. In addition, a motion for judgment on the pleadings may be brought at any time prior to trial and the Rule does not bar relief if discovery has been completed. *See* Fed. R. Civ. P. 12(c).

### B. Request for Leave to Amend

Alternatively, in the event the Court grants Defendant's motion, Plaintiff seeks leave to amend to specifically plead elements of the discovery rule under Rule 15(a). In reply, Defendant opposes arguing that Plaintiff has failed to demonstrate good cause to extend the deadline to request leave to amend under Rule 16 because Plaintiff waited more than seven months from when Defendant raised its affirmative defense of statute of limitations to seek leave to amend.

Once a district court has established a deadline for amended pleadings, and that deadline has passed, Rule 16 applies to modify a scheduling order. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-608 (9th Cir. 1992). A pretrial scheduling order can only be modified "upon a showing of good cause and with the judge's consent." Fed. R. Civ. P. 16(b). Rule 16's good cause standard is more stringent that the liberal amendment standard under Rule 15. *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006). "Good cause" focuses on the diligence of the party seeking an amendment. *Johnson,* 975 F.2d at 609. In general, the focus of the diligence inquiry is on the time between the moving party's discovery of new facts and its asking leave of the court to file an amended pleading. *See Zivkovic v. S. Cal. Edison Corp.*, 302 F.3d 1080, 1087-88 (9th Cir. 2002). District courts have also held that "[g]ood cause can be found where the non-moving party is already on notice of the moving party's reasons for modifying the scheduling order." *See Stockroom Inc. v. XR LLC*, SACV 08-01046-JVS (RNBx), 2009 WL 10671380, at *10 (C.D. Cal. July 17, 2009) (citing *Sousa v. Unilab Corp. Class II (Non-Exempt) Members Group Benefit Plan*, 252 F. Supp. 2d 1046, 1059 (E.D. Cal. 2002) (finding good cause and modifying scheduling order to include Defendant's statute of limitations defense where the Plaintiff was aware of the existence of the defense)); *see e.g.*, *Bullard v. Wastequip Mnfg. Co. LLC*, Case No. CV 14-01309 MMM (SSx), 2015

12

18cv967-GPC(MSB)

WL 12766467, at *12 (C.D. Cal. Apr. 14, 2015) ("Given [the plaintiff's] failure to plead the theory or show that he put defendants on notice that he asserted he had a separate oral contract [ ], moreover, the court concludes that good cause does not exist.").

Here, the parties have been litigating and conducting discovery on all causes of action, including the false or fraudulent trademark registration claim. Defendant has also been on notice regarding the statute of limitations as it raised the issue of the time gap to establish proximate damages in a prior motion to dismiss. Thus, the Court finds good cause exists to amend the scheduling order to allow Plaintiff to seek leave to file a second amended complaint.

Next, Rule 15(a) provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 15(a) is very liberal," *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006), and Rule 15(b) also "embodies a liberal policy in favor of allowing pleading amendments at any time during and even after trial." *United States v. Gila Valley Irrigation Dist.*, 859 F.3d 789, 804 (9th Cir. 2017) (quoting *Consol. Data Terminals v. Applied Digital Data Sys., Inc.*, 708 F.2d 385, 396 (9th Cir. 1983)). In assessing the propriety of an amendment, courts consider several factors: (1) undue delay, (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously permitted; (4) prejudice to the opposing party; and (5) futility of amendment. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *United States v. Corinthian Colleges,* 655 F.3d 984, 995 (9th Cir. 2011). These factors are not equally weighted; the possibility of delay alone, for instance, cannot justify denial of leave to amend, *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987), but when combined with a showing of prejudice, bad faith, or futility of amendment, leave to amend will likely be denied. *Bowles v. Reade*, 198 F.2d 752, 758 (9th Cir. 1999). Because Rule15(a) favors a liberal policy, the nonmoving party bears the burden of

demonstrating why leave to amend should not be granted. *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989).

Defendant's argument against leave to amend rests primarily on Rule 16. However, it also generally contends that it would be prejudiced but does not specifically explain what specific prejudice that would be suffered by CEFCU or what specific additional discovery it would need to conduct. (Dkt. No. 123 at 13.) However, in the event that discovery was needed, which has not been demonstrated, it may seek leave to conduct limited discovery based on the Court's ruling.

The Court also concludes that none of the *Foman* factors support denial of leave to amend. There has been no bad faith, undue delay, repeated failure to cure deficiencies by amendments previously permitted, prejudice to the opposing party demonstrated, and the amendment would not be futile. Accordingly, the Court GRANTS Plaintiff's request for leave to file a second amended complaint to conform to the Court's ruling.

**Conclusion**

Based on the above, the Court GRANTS Defendant's motion for judgment on the pleadings on the fifth cause of action for false and/or fraudulent registration of trademark under 15 U.S.C. § 1120 and GRANTS Plaintiff's request for leave to file a second amended complaint. Plaintiff shall file a second amended complaint within ten (10) days of the filed date of this order. The hearing set on April 17, 2020 shall be **vacated**.

IT IS SO ORDERED.

Dated: April 13, 2020

Hon. Gonzalo P. Curiel
United States District Judge

14
18cv967-GPC(MSB)