1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COUNTY CREDIT UNION,<br><br>                              Plaintiff,<br><br>v.<br><br>CITIZENS EQUITY FIRST CREDIT UNION,<br><br>                              Defendant. | Case No.:  18cv967-GPC(MSB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTIONS TO EXCLUDE EXPERT TESTIMONY OF ROBERT TAYLOR AND THEODORE DAVIS AS MOOT**<br><br>**[REDACTED VERSION - ORIGINAL FILED UNDER SEAL]**<br>**[Dkt. Nos. 152, 159, 163.]** |

Before the Court is Defendant's motion for summary judgment on the fifth cause of action for false or fraudulent trademark registration pursuant to 15 U.S.C. § 1120. (Dkt. No. 152.)  Plaintiff filed an opposition and Defendant replied.  (Dkt. Nos. 187, 218.)  In conjunction with the summary judgment motion, Plaintiff also filed a motion to exclude the expert testimony of Robert A. Taylor and a motion to exclude the expert testimony Theodore Davis Jr. which are fully briefed.  (Dkt. Nos. 159, 163, 176, 184, 223, 230.)  A hearing was held on July 2, 2020.  (Dkt. No. 243.)  Jesse Salen, Martin

1

Bader and Stephen Korniczky appeared as counsel for Plaintiff and James Dabney, Geoffrey Thorn, Emma Barrata and Stefanie Garibyan appeared as counsel for Defendant.  (*Id.*)

Based on the reasoning below, the Court GRANTS Defendant's motion for summary judgment on the fifth cause of action and DENIES Plaintiff's motions to exclude the expert testimony of Robert Taylor and Theodore Davis as MOOT.

### Procedural Background

On May 16, 2018, Plaintiff San Diego County Credit Union ("SDCCU") filed a complaint against Defendant Citizens Equity First Credit Union ("CEFCU") alleging the following causes of action: 1) declaratory judgment of non-infringement of federally registered trademark for "CEFCU. NOT A BANK. BETTER."; 2) declaratory judgment of non-infringement of common law mark "NOT A BANK. BETTER."; 3) declaratory judgment for invalidity of federally registered trademark for "CEFCU. NOT A BANK. BETTER."; 4) declaratory judgment for invalidity of common law mark "NOT A BANK. BETTER."; 5) false or fraudulent trademark registration under 15 U.S.C. § 1120; and 6) unfair competition under 15 U.S.C. § 1125.[1]  (Dkt. No. 1. Compl, ¶¶ 58-98.)

On July 31, 2018, the Court denied Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2). (Dkt. No. 39.)  On October 2, 2018, the Court denied Defendant's second motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) on the first four causes of action for declaratory judgment, and granted Defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6) on the fifth and sixth causes of action with leave to amend.  (Dkt. No. 47.)  On October 12, 2018, Plaintiff filed a first amended

---

[1] In response to a motion to dismiss, Plaintiff agreed to voluntarily dismiss the seventh and eighth causes of action alleging unfair competition under California law.  (Dkt. No. 47 at 4.)

18cv967-GPC(MSB)

complaint alleging the same six causes of action with additional factual allegations.  (Dkt. No. 48, FAC.)  On February 5, 2019, the Court denied Defendant's third motion to dismiss for lack of subject matter jurisdiction, and granted in part and denied in part Defendant's motion to dismiss for failure to state a claim.  (Dkt. No. 55.)  Specifically, the Court denied dismissal of the fifth cause of action for false/fraudulent registration of trademark under 15 U.S.C. § 1120 but granted dismissal of the attorney's fees and costs sought under 15 U.S.C. § 1120, and granted dismissal of the sixth cause of action for unfair competition under 15 U.S.C. § 1125.  (*Id.*)  On April 14, 2020, the Court granted Defendant's motion for judgment on the pleadings on the fifth cause of action for false or fraudulent trademark registration under 15 U.S.C. § 1120 as barred by the statute of limitations with leave to amend.  (Dkt. No. 134.)  On April 23, 2020, the operative second amended complaint ("SAC") was filed alleging the same five remaining causes of action.  (Dkt. No. 139.)

**Factual Background**

SDCCU and CEFCU are both large credit unions.  (Dkt. No. 139, SAC ¶ 2.)  SDCCU's customers are primarily located in Southern California while CEFCU's customers are primarily located in Peoria, Illinois and Northern California.  (*Id.*; Dkt. No. 187-1, SDCCU's Response to CEFCU's SSUF, No. 1.)

SDCCU owns U.S. Trademark Registration No. 4,560,596 for "IT'S NOT BIG BANK BANKING. IT'S BETTER" (the "SDCCU Mark") which issued on July 1, 2014.  (Dkt. No. 139-3, SAC, Ex. A.)

On September 1, 2010, CEFCU filed an application for federal registration of "CEFCU. NOT A BANK. BETTER", (Dkt. No. 187-1, SDCCU's Response to CEFCU's SSUF No. 8), which matured into U.S. Trademark Registration No. 3,952,993 (the "CEFCU Mark") on May 3, 2011.  (*Id.,* No. 10; Dkt. No. 139-4, SAC, Ex. B.)  CEFCU

1  also allegedly uses the common law mark "NOT A BANK. BETTER".  (Dkt. No. 139,
2  SAC ¶ 14.)

3       As part of its trademark application, CEFCU submitted the declaration of then
4  Vice-President, Susan K. Yoder, now Susan Portscheller ("Portscheller").  (Dkt. No. 187-
5  13, Salen Decl., Ex. 10.)  SDCCU claims that two statements in her declaration were
6  false and were made in order to advance the registration of CEFCU's Mark.  First
7  Portscheller stated the CEFCU Mark was "first used in the sale or advertising of the
8  services . . . rendered in Interstate commerce which may be lawfully regulated by
9  Congress as early as February 5, 2007, and is now in use in such commerce."  (*Id.* at 1.[2])
10  Second, she declared that "to the best of her knowledge and belief no other person, firm,
11  corporation, or association has the right  to use the above identified mark in commerce,
12  either in the identical form thereof or in such near resemblance thereto as to be likely,
13  when used on or in connection with the goods of such other person, to cause confusion,
14  or to cause mistake, or to deceive."  (*Id.* at 2.)

15       SDCCU has alleged that to distinguish themselves from banks, credit unions use
16  similar themed taglines and/or trademarks, and that Third Party Marks consisting of
17  "NOT A BANK – BETTER!"; "BETTER THAN A BANK"; and "IT'S NOT A BANK"
18  were in use prior to CEFCU's use and registration of its mark.  (Dkt. No. 139, SAC ¶¶ 3,
19  4.)  SDCCU also claims that CEFCU, though Kevin Schneider, then outside counsel,
20  fraudulently filed the trademark application even though CEFCU and Schneider knew
21  about Third-Party Marks identified in the prefiling trademark search report they ordered
22  and reviewed.  (*Id.* ¶ 38.)

[2] Page numbers are based on the CM/ECF pagination.

4

18cv967-GPC(MSB)

On May 17, 2017, CEFCU filed a petition for cancellation[3] of the '596 Trademark Registration No. for the SDCCU Mark with the U.S. Patent and Trademark Office's ("USPTO") Trademark Trial and Appeal Board ("TTAB") claiming the SDCCU Mark is likely to cause confusion or to cause mistake or to deceive consumers when viewing CEFCU's Mark.  (Dkt. No. 139-6, SAC, Ex. D.)  On March 23, 2018, CEFCU filed a motion for leave to amend its cancellation petition to add its alleged common law mark of "NOT A BANK. BETTER" ("CEFCU Common Law Mark") against SDCCU.  (Dkt. No. 139, SAC ¶ 14.)  On August 28, 2017, SDCCU filed a first amended counterclaim seeking cancellation of the CEFCU Mark.  (Dkt. No. 152-4, Dabney Decl., Ex. 1.)  After this case was filed on May 16, 2018, SDCCU moved to stay the cancellation proceedings which the USPTO granted on June 8, 2018.  (Dkt. No. 29-3, Dabney Decl., Ex. 23 at 202; *id.*, Ex. 24 at 208.)

**Discussion**

**A.     Legal Standard on Motion for Summary Judgment**

Federal Rule of Civil Procedure ("Rule") 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material when it affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

---

[3] *Citizens Equity First Credit Union v. San Diego Cnty. Credit Union,* Cancellation No. 92066165.

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp.,* 477 U.S. at 323. The moving party can satisfy its burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. Summary judgment is warranted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159-60 (1970). A "party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.,* 690 F.2d 1235, 1238 (9th Cir. 1982) (citations omitted).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). In making this determination, the court

must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin,* 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

**B.    Statute of Limitations**

CEFCU argues that the fifth cause of action is time barred because the SAC fails to plead elements of the discovery rule on one of the two false statements made by Portscheller that "CEFCU falsely declared that the CEFCU Mark was used in commerce as of February 5, 2007 with the intention of deceiving the U.S. Patent and Trademark Office such that the CEFCU Mark would advance to registration." (Dkt. No. 139, SAC ¶ 106.) It further argues that because the first alleged false statement is time-barred, the second alleged false statement is necessarily time-barred. SDCCU disagrees arguing that it has sufficiently plead the discovery rule concerning both statements.

"The Lanham Act contains no express statute of limitations and the general rule is that when a federal statute provides no limitations for suits, the court must look to the state statute of limitations for analogous types of actions. A claim for fraud under the Lanham Act conforms to this general rule." *Beauty Time, Inc. v. VU Skin Sys., Inc*., 118 F.3d 140, 143 (3d Cir. 1997) (citing *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1395 (9th Cir. 1993) (applying Oregon's two-year limitation period)). Therefore, California's three-year statute of limitations for fraud applies on this cause of action. *See* Cal. Code Civ. Proc. § 338(d). Under section 338(d), "[t]he cause of action . . . is not deemed to have accrued until the *discovery*, by the aggrieved party, of the facts constituting the fraud or mistake." *Id*. (emphasis added). As a general matter, "a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" *Fox v. Ethicon Endo-Surgery, Inc*., 35 Cal. 4th 797, 806 (2005) (quoting *Norgart v. Upjohn Co.,* 21 Cal. 4th 383, 397 (1999)). However, the discovery rule

"delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Fox*, 35 Cal. 4th at 807; *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988) (the statute of limitations begins once "the plaintiff has notice or information of circumstances to put a reasonable person on inquiry . . . ."). In other words, the statute of limitations begins to run when a plaintiff "suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly*, 44 Cal. 3d at 1110; *Norgart*, 21 Cal. 4th at 397 ("the plaintiff discovers the cause of action when he at least suspects a factual basis . . . for its elements"). Once on inquiry notice, the plaintiff has an obligation to discover facts and cannot sit on his rights but must go find them himself. *Jolly,* 44 Cal. 3d at 1111.

"In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'" *Fox*, 35 Cal. 4th at 808 (quoting *McKelvey v. Boeing N. American, Inc.,* 74 Cal. App. 4th 151, 160 (1999) (emphasis in original)). The plaintiff "must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light." *Id.* at 808-09.

CEFCU challenges as time barred Portscheller's false statement that the CEFCU Mark was used in commerce as of February 5, 2007 because the SAC fails to allege the time and manner of discovery and the inability to have made earlier discovery despite reasonable diligence. Because the factual predicates were publicly available to SDCCU during the three-year statute of limitations period, CEFCU argues SDCCU's claim is barred. For example, CEFCU notes that prior to any discovery in the cancellation

1    proceeding, SDCCU was able to assert a counterclaim alleging CEFCU made a false or

2    fraudulent statement to the USPTO stating that the CEFCU Mark was being used in

3    commerce as of February 5, 2007.[4]   (Dkt. No. 152-4, Dabney Decl., Ex. 1, First Am.

4    Counterclaim ¶ 7.)   Therefore, it contends that SDCCU has failed to plead that a

5    reasonable investigation would not have disclosed **a** factual basis for the cause of action.

6          SDCCU opposes arguing that it has sufficiently alleged that it would not have been

7    able to discover the basis of the false statement concerning use in commerce until after

8    CEFCU filed its petition for cancellation on May 18, 2017 because it did not know about

9    the existence of CEFCU's mark until then and had no reason to investigate whether

10   Portscheller's statement was true.

11         Here, the SAC alleges that CEFCU procured the '993 Registration by a false

12   statement made in a declaration filed on September 1, 2010 by then CEFCU's Vice-

13   President Susan K. Yoder in the application for the '993 registration.   (Dkt. No. 139,

14   SAC ¶ 37; Dkt. No. 139-5, Compl., Ex. C.)   She declared that the CEFCU Mark was used

15   in interstate commerce as of February 5, 2007, when in fact, CEFCU did not direct its

16   advertising using its mark outside the Illinois market prior to June 2011.   (Dkt. No. 139,

17   SAC ¶¶ 36, 37; Dkt. No. 139-5, Compl., Ex. C at 2.)   The SAC further claims that

18   SDCCU could not have known about the false statement in Portscheller's declaration

19   until after the filing of the petition for cancellation on May 17, 2017.   (*Id.* ¶ 109.)

20   SDCCU did not become aware of the CEFCU mark until May 18, 2017 when CEFCU's

21   petition for cancellation against Travis Credit Union's mark was inadvertently served on

22   SDCCU.   (*Id.* ¶ 39.)   SDCCU did not become aware of the term "NOT A BANK.

23

24   _____

25   [4] The First Amended Counterclaim asserted that "[o]n information and belief, Petitioner knowingly and
     intentionally misrepresented to the U.S. Patent and Trademark Office that the CEFCU Mark was being
26   used in commerce as early as February 5, 2007, and continuing through September 1, 2010, and
     therefore obtained its registration of the CEFCU Mark fraudulently."   (Dkt. No. 152-4, Dabney Decl.,
27   Ex. 1, First Am. Counterclaim ¶ 7.)

                                                        9

28                                                                                      18cv967-GPC(MSB)

1  BETTER" until after November 2017 based on discovery responses in the cancellations
2  action.  (*Id.* ¶ 40.)  The SAC explains that SDCCU had no reason to search for CEFCU's
3  trademarks because it operates in a geographically distinct market and did not know or
4  consider CEFCU a competitor at any time before May 18, 2017.  (*Id.* ¶ 41.)

5         Here, the SAC alleges the discovery rule by stating the time and manner of
6  discovery and inability to have made the discovery earlier despite reasonable diligence.
7  The discovery rule is invoked when SDCCU suspected or would have suspected the
8  alleged wrongdoing by CEFCU.  SDCCU had no reason to suspect any wrongful conduct
9  by CEFCU because it was not aware of CEFCU's Mark until the petition for cancellation
10 against Travis Credit Union was filed in May 2017.  Moreover, CEFCU does not point to
11 any facts that should have put SDCCU on notice of an alleged wrongdoing.  Therefore,
12 SDCCU was not on inquiry notice about any alleged wrong until May 2017.  The fact
13 that SDCCU was able to allege its fraud claim in a counterclaim in the cancellation action
14 prior to discovery demonstrates that the facts supporting the claim were available in the
15 public record; it does not show that SDCCU should have suspected any alleged
16 wrongdoing by CEFCU.  *See Jolly,* 44 Cal. 3d at 1110; *Norgart,* 21 Cal. 4th at 397 ("the
17 plaintiff discovers the cause of action when he at least suspects a factual basis . . . for its
18 elements").  In fact, once SDCCU was on inquiry notice on May 18, 2017, it conducted
19 an investigation and based on the public records, it filed its amended counterclaim in
20 August 2017 seeking to cancel CEFCU's registration based on fraudulent statements.
21 Contrary to CEFCU's argument, nothing put SDCCU on notice of any wrongdoing until
22 May 2017; therefore, SDCCU's claim for false or fraudulent trademark registration is

23
24
25
26
27
28

10

18cv967-GPC(MSB)

1    timely and the Court DENIES CEFCU's motion for summary judgment the fifth cause of

2    action under 15 U.S.C. § 1120 as time barred.[5]

3    **C.    False or Fraudulent Trademark Registration, 15 U.S.C. § 1120**

4          CEFCU moves for summary judgment arguing that SDCCU cannot show by clear

5    and convincing evidence that the two alleged false statements by Portscheller made to the

6    USPTO were false or fraudulent.  SDCCU disagrees.

7          Under the Lanham Act,

8          Any person who shall procure registration in the Patent and Trademark
          Office of a mark by a false or fraudulent declaration or representation, oral
9          or in writing, or by any false means, shall be liable in a civil action by any
          person injured thereby for any damages sustained in consequence thereof.
10

11

12   15 U.S.C. § 1120.  The Court has authority to cancel the federal registration of a

13   trademark.  15 U.S.C. § 1119.

14         A claim for cancellation of trademark registration due to fraud requires "(1) a false

15   representation regarding a material fact; (2) the registrant's knowledge or belief that the

16   representation is false; (3) the registrant's intent to induce reliance upon the

17   misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5)

18   damages proximately caused by that reliance." *Hokto Kinoko Co. v. Concord Farms*, Inc.,

19   738 F.3d 1085, 1097 (9th Cir. 2013) (*citing Robi v. Five Platters, Inc.*, 918 F.2d 1439,

20   1444 (9th Cir. 1990)); *see also In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009) (A

21   "trademark is obtained fraudulently under the Lanham Act only if the applicant or

22   registrant knowingly makes a false, material representation with the intent to deceive the

23   PTO.").  Here, CEFCU moves for summary judgment arguing that SDCCU has made an

24

25

26   [5] Because the Court denies CEFCU's motion as time barred, the Court need not address its alternative
     argument that if the alleged false statement concerning use in commerce is time-barred, the second
27   alleged false statement concerning third-party marks is necessarily time-barred.

28
                                                  11

                                                                              18cv967-GPC(MSB)

1  insufficient showing to establish the elements relating to false representation of a material

2  fact and knowledge that it was false.  (Dkt. No. 196 at 13-18.)

3       A party seeking to cancel a trademark registration must prove by clear and

4  convincing evidence that the trademark registration was procured by fraud and the burden

5  is a heavy one.  *Robi,* 918 F.2d at 1444; *L.D. Kichler Co. v. Davoil, Inc.,* 192 F.3d 1349,

6  1351 (Fed. Cir. 1999) ("[A] party seeking cancellation for fraudulent procurement must

7  prove the alleged fraud by clear and convincing evidence." (citation omitted)).  Making a

8  false statement, by itself, is not sufficient to cancel a mark.  *Metro Traffic Control, Inc. v.*

9  *Shadow Network Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997). "The question is not whether

10  the statement is factually false, but whether *the applicant* subjectively believed it was

11  false at the time he or she made the representation."  *Marketquest Grp., Inc. v. BIC Corp.,*

12  316 F. Supp. 3d 1234, 1278 (S.D. Cal. 2018) (quoting *Ricks v. BMEzine.com, LLC*, 727

13  F. Supp. 2d 936, 967 (D. Nev. 2010) (emphasis in original)).

14       For allegations of trademark fraud,

15       [i]ntent to deceive must be "willful." If it can be shown that the statement
         was a "false representation" occasioned by an "honest" misunderstanding,
16       inadvertence, negligent omission or the like rather than one made with a
         willful intent to deceive, fraud will not be found. [Citations] Fraud,
17       moreover, will not lie if it can be proven that the statement, though false,
         was made with a reasonable and honest belief that it was true . . . .There is
18       no room for speculation, inference or surmise, and obviously, any doubt
         must be resolved against the charging party.
19

20

21  *Oreck Corp. v. Thomson Consumer Elecs., Inc.,* 796 F. Supp. 1152, 1159-60 (S.D. Ind.

22  1992) (quoting *Citibank N.A. v. Citibanc Group, Inc*., No. CV80-PT-0464-S, 1982 WL

23  52144, at *26 (N.D. Ala. March 24, 1982), *aff'd* 724 F.2d 1540 (11th Cir. 1984)).

24       An "allegation of 'failure to disclose use by others' creates the greatest number of

25  fraud in the procurement cases but remains 'a serious charge which is not easily

26  proven.'" *San Juan Prods.,* 849 F.2d at 472-73 (citing 2 J. McCarthy, § 31:21, at 614).

27

28

A trademark registration applicant must have "a bona fide intention, under circumstances showing the good faith of such person, to use a trademark in commerce." 15 U.S.C. § 1051(b)(1).  Further, the Lanham Act requires that a trademark registration applicant submit "a verified statement that the mark is in use in commerce and specifying the date of the applicant's first use of the mark in commerce and those goods or services specified in the notice of allowance on or in connection with which the mark is used in commerce." *Id.* § 1051(d)(1).  15 U.S.C. § 1051(a)(3) only requires that the declarant state "to the best of the verifier's knowledge and belief, no other person has the right to use such mark in commerce." *Id.* § 1051(a)(3).  Therefore, statements in a trademark application "require the statement of beliefs about exclusive rights, not their actual possession." *American Sec. Bank v. American Sec. & Trust Co*., 571 F.2d 564, 568 (C.C.P.A. 1978).

### 1.     False or Fraudulent Statement Re: "Use in Commerce"

SDCCU claims that CEFCU falsely declared that the CEFCU Mark was used in commerce as of February 5, 2007.  CEFCU argues that SDCCU has presented no evidence to support its claim that Portscheller made the false statement that the CEFCU Mark had been used in commerce as of February 5, 2007 and that Portscheller had any belief that the "use in commerce" statement was untrue.  (Dkt. No. 152-1 at 13-15.)  In opposition, SDCCU argues CEFCU has failed to identify any admissible evidence demonstrating the veracity of Portscheller's statement.  (Dkt. No. 187 at 19.)

At summary judgment, the appropriate question is whether a reasonable jury could find, by clear and convincing evidence, that the "use in commerce" statement by Portscheller was false.  *See Anderson*, 477 U.S. at 255-56.  A "party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment.  Instead, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citing Fed. R. Civ. P. 56(e)).  At

trial, SDCCU will have the burden of demonstrating by clear and convincing evidence the elements to support a cause of action for false or fraudulent trademark registration. *See Robi*, 918 F.2d at 1444. On a motion for summary judgment, it is Plaintiff's burden to provide evidence sufficient to show falsity by clear and convincing evidence; CEFCU is not required to disprove the allegations of fraud. *See Marketquest Grp., Inc.*, 316 F. Supp. 3d at 1278-79 (citing *Anhing Corp. v. Thuan Phong Co.,* 215 F. Supp. 3d 919, 938 (C.D. Cal. 2015) ("Although Defendant maintains that Plaintiff has not produced evidence to support or verify Mr. Ly's statements [to the PTO], this argument is unpersuasive, as it is Defendant's burden to produce clear and convincing evidence of fraud.") and *Learning Internet v. Learn.com, Inc*., No. CV 07-227-AC, 2009 WL 6059550, at *6 (D. Or. Nov. 25, 2009) (party claiming falsity of acquired distinctiveness declaration must show that the mark had not been in continuous use for five years)).

Here, SDCCU incorrectly claims that it is Defendant's burden to show that Portscheller's statement was not true, and, in doing so, fails to meet its burden opposing summary judgment, that is, presenting evidence to create a material issue of fact.

Under the Lanham Act, the word "'commerce' means all commerce which may lawfully be regulated by Congress . . . ." 15 U.S.C. § 1127.

> The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce--. . . on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

*Id.* A mark is deemed to be "use in commerce" where (1) "when it is used or displayed in the sale or advertising of services" to customers and (2) "the services are rendered in commerce." *Rearden LLC v. Rearden Commerce, Inc*., 683 F.3d 1190, 1204 (9th Cir.

1    2012) (citing 15 U.S.C. § 1127); *Chance v. Pac–Tel Teletrac, Inc*., 242 F.3d 1151, 1159

2    (9th Cir. 2001) (the requirement has two parts: "(1) an element of actual use, and (2) an

3    element of display.").  "Commerce" as defined within the Lanham Act has been

4    interpreted liberally to include those intrastate activities which "could affect . . .

5    commerce which Congress can regulate." *Maier Brewing Co. v. Fleischmann Distilling*

6    *Corp.,* 390 F.2d 117, 120 (9th Cir), *cert denied by* 391 U.S. 966 (1968).  Use in

7    commerce of the alleged mark must be "sufficiently public to identify or distinguish the

8    marked goods in an appropriate segment of the public mind as those of the adopter of the

9    mark." *New West Corp. v. NYM Co. of Cal., Inc*., 595 F.2d 1194, 1200 (9th Cir. 1979).

10          Here, CEFCU presents the following undisputed evidence to support Portscheller's

11   declaration that the CEFCU Mark has been used in commerce since February 5, 2007.

12   As of February 5, 2007, CEFCU has continuously offered credit union services from

13   locations inside the State of Illinois to customers located both inside and outside the State

14   of Illinois, and whose membership includes employees of CATERPILLAR dealers and

15   corporate employees who are located inside and outside of Illinois.  (Dkt. No. 187-1,

16   SDCCU's Response to CEFCU's SSUF, Nos. 2, 3.)  CEFCU credit union services have

17   been regulated by the National Credit Union Administration ("NCUA"), by, among

18   things, insuring CEFCU deposit accounts since February 5, 2007.  (*Id.*, No. 4.)  Since

19   February 5, 2007, CEFCU has advertised and marketed credit union services from

20   locations inside the State of Illinois to members located outside the State of Illinois,

21   including members who have moved away from central Illinois and members who are

22   employees of CATERPILLAR dealers and CATERPILLAR company facilities.  (*Id.*, No.

23   6.)

24          Moreover, CEFCU has produced other evidence to demonstrate use in commerce.

25   According to the Assistant Vice President of Market Strategy and Analytics, Jennifer

26   Flexer, since February 5, 2007, CEFCU has used its Mark in connection with the

27                                                   15

28                                                                                  18cv967-GPC(MSB)

1   marketing, advertising and sale of credit union services.  (Dkt. No. 152-29, Flexer Decl. ¶

2   4.) ████████████████████████████████████████████

3   ████████████████████████████████████████████████████

4   ████████████████████   (Dkt. No. 152-29, Flexer Decl. ¶ 3; Dkt. No. 196-20, Flexer

5   Decl., Ex. 1 (UNDER SEAL).)  In addition, Flexer attached copies of account statements

6   sent to CEFCU members in various states around August 2009 which include advertising

7   "CEFCU.® Not a bank. Better."  (Dkt. No. 152-29, Flexer Decl. ¶ 5; Dkt. No. 152-31,

8   Flexer Decl., Ex. 2.)  Also attached are copies of an Internet archive screen capturing

9   CEFCU's website as of March 18, 2007 and November 16, 2007 where the mark is

10  presented as "CEFCU. . . Not a bank. Better."  (Dkt. No. 152-29, Flexer Decl. ¶ 6; Dkt.

11  No. 152-32, Flexer Decl., Ex. 3.)  Finally, CEFCU cites to its newspaper advertisement

12  dated February 5, 2007 with its Mark, "CEFCU. Not a bank. Better."  (Dkt. No. 29-3,

13  Dabney Decl., Ex. 9 at 53), as well as copies of CEFCU Home Equity Loan

14  advertisements dated February 6, 2007 with "CEFCU. Not a bank. Better."  (*Id.,* Ex. 10 at

15  56-63.)

16          In response, SDCCU does not present any evidence to challenge CEFCU's

17  evidence but instead merely disputes the admissibility of CEFCU's evidence concerning

18  the two internet screenshots, or Wayback Machine, from March 18, 2007 and November

19  16, 2007 as inadmissible hearsay and not authenticated.  (Dkt. No. 187 at 13.)

20  Notwithstanding the inadmissibility of the two internet screenshots from 2007, CEFCU's

21  other evidence supports Portscheller's statement that the CEFCU Mark was used in

22  commerce as of February 5, 2007.  The totality of circumstances demonstrates the

23  CEFCU Mark was displayed and used in commerce as of February 5, 2007.  *See Chance*,

24  242 F.3d at 1159.

25          One district court concluded that an internet website which prominently features

26  and promotes a bank's services in connection with its mark and having members outside

27

28

18cv967-GPC(MSB)

of a state constitute "use in commerce."  *See Laurel Capital Grp., Inc. v. BT Fin. Corp.*, 45 F. Supp. 2d 469, 479 (W.D. Pa. 1999) ("website is accessible to customers worldwide . . . Internet users constitute a national, even international, audience, who must use interstate telephone lines to access defendant's website").  The case involved two Pennsylvania-based banks where the court addressed "use in commerce" in the context of subject matter jurisdiction under the Lanham Act.  *Id.* at 477.  The court noted several factors supported interstate commerce.  It found that the bank's website which prominently featured its services with the mark was accessible to customers worldwide.  *Id.* at 479.  The court also explained that the bank had at least 40 bank accounts held by customers who resided outside of Pennsylvania.  *Id.*  Third, the bank engaged in some, though limited, interstate advertising.  *Id.*

In the present case, CEFCU has shown that it has had membership throughout the United States, advertised its services with the Mark in a local newspaper, and sent account statements to its members that included the Mark.  Accordingly, CEFCU has provided factual support that Portscheller's statement that the Mark was "used in commerce" as of February 5, 2007 was not false.  In opposition, SDCCU does not present any evidence to create a genuine issue of material fact whether the Portscheller's statement was false.

The Court also does not find SDCCU's citation to cases persuasive.  In *Burns v. Realnetworks, Inc*., 359 F. Supp. 2d 1187, 1192-93 (W.D. Okla. 2004), the court noted that the mere posting of a webpage is insufficient to create ownership rights where no one viewed or knew it existed, as admitted by the holder of the common law trademark. Here, to the extent that the two internet screenshots of CEFCU's website from 2007 were admissible, it is not claimed that no one had viewed CEFCU's website.  Meanwhile, in *FW OmniMedia Corp. v. Toyota Motor Sales, U.S.A., Inc*., No. 04CV–8624 GPS (JRx). 2004 WL 3203134, at *9 (C.D. Cal. Dec. 8, 2004), the court found FW OmniMedia had

not sufficiently proven trademark use of "FW ▶ ▶ forward" where that form did not appear consistently in FW's magazine. Here, unlike *FW OmniMedia Corp.*, there is no suggestion that CEFCU did not make consistent use of its Mark.

CEFCU also argues that SDCCU does not have any evidence that Portscheller knew that the statement she made regarding commercial use was false. SDCCU challenges the truthfulness of evidence presented by CEFCU because they involve deposition testimonies of those involved in the challenged fraud. SDCCU does not present any evidence to challenge the statements of Portscheller and Flexer.

In support, Portscheller testified that she believed that the CEFCU Mark was in use in commerce as of February 5, 2007. (Dkt. No. 152-9, Dabney Decl., Ex. 6, Porscheller Depo. at 24:2-12; 28:6-29:1). Moreover, Flexer testified that in an email she sent on August 19, 2010, to Shawn Harrison, CEFCU's Compliance Manager, (Dkt. No. 196-5, Dabney Decl., Ex. 8, Flexer Depo. at 90:2-5), there were attachments of advertisements of the CEFCU Mark to be used in support of its application for registration. (*Id.* at 117:16-120:8.) One of the documents was a proof of an advertisement to be placed in the Peoria Journal Star dated February 5, 2007. (*Id.*)

Direct evidence of a subjective intent to deceive is difficult to prove but is an indispensable element of the cause of action. *In re Bose Corp.*, 580 F.3d at 1245. Therefore, "because direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence. But such evidence must still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement." *Id.* (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)). Indeed, "[t]here is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive." *Id.* at 1246 (reversing USPTO decision cancelling trademark registration because substantial evidence did not show that Bose intended to deceive the

1    PTO in the renewal process).   In *In re Bose*, the declarant knew that Bose had stopped

2    manufacturing and selling audio tape recorders and players at the time of renewal but he

3    believed Bose's repair of the damaged, previously-sold WAVE audio tape recorders and

4    players and returning them to the customers met the "use in commerce" requirement for

5    the renewal of the trademark.  *Id.* at 1246.  Because the declarant testified under oath that

6    he believed the statement was true at the time he signed the renewal application, the court

7    noted that the opposing party's burden was to point to evidence to support an inference of

8    deceptive intent; otherwise, it fails to satisfy the clear and convincing evidence standard

9    required to establish a fraud claim.  *Id.*

10         In *Stanfield*, the Tenth Circuit affirmed the district court's summary judgment in

11   favor of the defendant.  *Stanfield v. Osborne Indus., Inc.,* 52 F.3d 867, 874 (10th Cir.

12   1995) (*abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components,*

13   *Inc.,* 572 U.S. 119 (2014)).  On the issue of whether the registrant knew or believed that

14   the representation he made was false, the court noted that the plaintiff presented no

15   evidence that defendant knew the oath was false.  *Id.*  In support, the defendant produced

16   the affidavits of the registrant, Stanley, and his brother Ronald, an employee and vice

17   president of marketing and engineering, stating the declarant believed that defendant had

18   the right to register the trademarks.  *Id.*  The court concluded, "[w]ith no other evidence

19   to contradict defendants' statements, plaintiff has failed "to establish the existence of an

20   element essential to [his] case." *Id.* (citing *Celotex*, 477 U.S. at 322).

21         Similarly, here, while SDCCU challenges the truthfulness of the deposition

22   testimony of Portscheller and Flexer, it fails to present any direct or indirect and

23   circumstantial evidence that would create an inference of fraud as to Portscheller's

24   statement.  By its failure to present any affirmative evidence to support the false

25   statement and knowledge elements of the cause of action, Plaintiff has failed to meet its

26   clear and convincing evidence burden that it is required to meet.

27
                                            19
28                                                                   18cv967-GPC(MSB)

1    Thus, the Court GRANTS Defendant's motion for summary judgment on Susan
2  Portscheller's declaration stating that the CEFCU Mark had been used in commerce as of
3  February 5, 2007.

4         **2.      False or Fraudulent Statement re: Right to Use**

5         On the existence of third-party rights, the SAC alleges two alleged false
6  statements.  First, Susan Portscheller falsely declared that "to the best of her knowledge
7  and belief no other person, firm, corporation, or association has the right to use the above
8  identified mark in commerce, either in the identical form thereof or in such near
9  resemblance thereto as to be likely, when used on or in connection with the goods of such
10  other person, to cause confusion, or to cause mistake, or to deceive . . . ." (Dkt. No. 139,
11  SAC ¶ 37.)  Second, CEFCU's attorney filed the trademark application around
12  September 1, 2010 even though he knew about the Third-Party Marks in the pre-filing
13  trademark search report.  (*Id.* ¶ 38.)

14        Defendant contends that the falsity of Portscheller's statement is not supported by
15  any evidence submitted by SDCCU.  In response, SDCCU does not challenge the motion
16  as to Susan Portscheller's statement.  (Dkt. No. 187 at 7, 21-24.)  Therefore, the Court
17  GRANTS CEFCU's motion for summary judgment as to the statement concerning the
18  "right to use" statement contained in Portscheller's declaration.

19        SDCCU's opposition focuses on Kevin Schneider's, CEFCU's then-outside
20  counsel, filing of the trademark application concerning CEFCU's "right to use"
21  declaration even though he and CEFCU knew about an existing third-party common law
22  mark for the same tagline, "Not a Bank – BETTER!" used by a Georgia-based credit
23  union, United First Federal Credit Union ("UFFCU").  (Dkt. No. 187 at 21.)  At the
24  hearing, SDCCU argued that the core of its fraud claim is based on a false statement that
25  CEFCU believed it had the right to use the CEFCU mark in commerce that was made in a

26

27                                        20

28                                                              18cv967-GPC(MSB)

declaration[6] to the PTO that was submitted by CEFCU's attorney, Schneider.  (Dkt. No. 245, Trans. at 5.)  In reply, CEFCU argues that SDCCU has presented no admissible evidence that as of August 26, 2020, the date the declaration was signed, a third-party had "the right to use" CEFCU. NOT A BANK. BETTER. "either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such person, to cause confusion, or to cause mistake, or to deceive" and that CEFCU knew or subjectively believed that the third-party had such superior legal rights. (Dkt. No. 218 at 10-11.)

██████████████████████████████████████████████████████████

██████████████████████████████████████████████. (Dkt. No. 208-6, Salen Decl., Ex. 9, Schneider Depo. at 48:8-10 (UNDER SEAL).)  ████████████████

██████████████████ (*Id.* at 49:7-12.)  ████████████████████████████

██████████████████████████████████████████. (*Id.* at 58:4-7; 59:14-23.)  ████████████████████████████████████████

██████████████████████████████████████████████████████ (*Id.* at 61:16-24.)  ████████████████████████████████████████████████

██████████████████ (*Id.*)  ████████████████████████████████████

██████████████████████████████████████████ (Dkt. No. 196-4, Dabney Decl., Ex. 7 at 91:4-14 (UNDER SEAL).)  ████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████ (Dkt. No. 196-9, Dabney Decl., Ex. 12 (UNDER SEAL).)

Based on this evidence, SDCCU argues that Schneider admitted and knew that UFFCU had been using the tagline "Not a Bank – BETTER!" to market its credit union

---

[6] Although not specifically stated, it appears SDCCU is referencing Portscheller's declaration.

18cv967-GPC(MSB)

services in Georgia prior to filing the trademark registration.  The "common law" section of the search report identified conflicting marks based on the use of the mark, not its registration.  CEFCU replies that reliance on the trademark search report to prove the truth of the search report that the common law mark had been used by another bank is inadmissible hearsay.  (Dkt. No. 218 at 10-11.)

The admissibility of a trademark search report depends on its use.  In general, trademark search reports are inadmissible to show that a third-party mark has been registered or has been in commercial use.  *See Marketquest Grp.*, 316 F. Supp. 3d at 1268 n. 19 ("[I]t is well settled that a trademark search report does not constitute evidence of either the existence of the registration or the use of a mark.") (citing *Icon Enters. Int'l v. Am. Prods*. Co., CV 04–1240 SVW (PLAx), 2004 WL 5644805, at *31 (C.D. Cal. Oct. 7, 2004) (quoting 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 11:88 (4th ed. 2001)); *Saul Zaentz Co. v. Wozniak Travel, Inc.,* 627 F. Supp. 2d 1096, 1113 (N.D. Cal. 2008) ("When a search report is offered to prove what the report asserts, i.e. that a mark has been registered and that it is in commercial use, this is classic inadmissible hearsay.").  However, if the trademark search report is relied on to show notice to the plaintiff, or the effect of the report on the listener, then it is not hearsay.  *Saul Zaentz Co.,* 627 F. Supp. 2d at 1113.

Here, SDCCU argues that the declaration that Schneider submitted as part of the trademark application regarding "right to use" was false and relies on the trademark search report to demonstrate that UFFCU used the tagline "Not a Bank – BETTER!" prior to CEFCU's trademark registration.  (Dkt. No. 208-3, Salen Decl., Ex. 6 at 106 (UNDER SEAL).)  However, the trademark search report is inadmissible to show that UFFCU's common law mark had been used in commerce and cannot prove that "the right to use" statement was false.  As such, Schneider's testimony regarding the trademark search report is also inadmissible.  At the hearing, SDCCU acknowledged that the

trademark search report is inadmissible hearsay but argued that it can be used to demonstrate that Schneider had notice of the Third Party Mark in the trademark search report and supports it claim.  However, notice of the trademark search report is distinct from knowledge that the Third-Party Mark had been used in commerce and had rights superior to CEFCU.  *See Int'l House of Pancakes, Inc. v. Elca Corp*., 216 U.S.P.Q. 521, 525 (Trademark Tr. & App. Bd.1982) ("The mere fact that applicant received the [trademark] search report and its attorney's letter is insufficient to charge it with knowledge of a third party use . . . much less [with knowledge] that the entity had any rights superior to applicant's.").

In order to establish that an applicant executed its trademark registration application fraudulently, SDCCU would have to prove: "(1) there was in fact another use of the same or a confusingly similar mark at the time the oath was signed; (2) the other user had legal rights superior to applicant's; (3) applicant knew that the other user had rights in the mark superior to applicant's, and either believed that a likelihood of confusion would result from applicant's use of its mark or had no reasonable basis for believing otherwise; and that (4) applicant, in failing to disclose these facts to the Patent and Trademark Office, intended to procure a registration to which it was not entitled." *Hana Fin., Inc v. Hana Bank*, 500 F. Supp. 2d 1228, 1234 (C.D. Cal. 2007).  On these factors, even if notice were sufficient to show Schneider was aware of a similar existing Third-Party Mark, SDCCU has not shown, by clear and convincing evidence that UFFCU had legal rights superior to CEFCU or that Schneider knew that the UFFCU had rights in the mark superior to CEFCU.  Therefore, SDCCU's argument of an alleged false statement concerning "the right to use" is not supported.

SDCCU's additional evidence shows UFFCU's advertisements using its tagline dated April 2008 to September 2008, (Dkt. No. 196-9, Dabney Decl., Ex. 12 (UNDER

SEAL)), after CEFCU claims its Mark was being used in commerce, that is, February 5, 2007, and lends no succor.[7]

Finally, at the hearing, the SDCCU disputed CEFCU's claim that its trademark has been used in commerce as of February 5, 2007 claim as it is based solely on a single newspaper ad that was run in a local newspaper in Peoria, Illinois.  (Dkt. No. 245, Trans. at 10.)  However, in the record, the Court notes that SDCCU did not dispute CEFCU's separate statement of undisputed material facts that as of February 5, 2007, CEFCU has continuously offered credit union services from locations inside the State of Illinois to customers located both inside and outside the State of Illinois, and whose membership includes employees of CATERPILLAR dealers and corporate employees who are located inside and outside of Illinois.  (Dkt. No. 187-1, SDCCU's Response to CEFCU's SSUF, Nos. 2, 3.)  Since February 5, 2007, CEFCU has advertised and marketed credit union services from locations inside the State of Illinois to members located outside the State of Illinois, including members who have moved away from central Illinois and members who are employees of CATERPILLAR dealers and CATERPILLAR company facilities. (*Id.*, No. 6.)

Therefore, as to Schneider, SDCCU has failed to meet its burden on summary judgment to set forth facts to support a claim of fraudulent trademark registration under

---

[7] At the hearing, the Court questioned the admissibility of UFCCU's newspaper advertisement as hearsay.  (Dkt. No. 245, Trans. at 9.)  SDCCU acknowledged that UFCCU's newspaper advertisement is hearsay but stated it had recently sent CEFCU a declaration from UFCCU stating that the ads were business records and fall under an exception to the hearsay rule.  Acknowledging that the admissibility standard on summary judgment is distinct from trial, SDCCU asserted it will produce the declaration at trial.  "At the summary judgment stage, courts focus on admissibility of the evidence's content, not its form."  *Clark v. Cnty. of Tulare*, 755 F. Supp. 2d 1075, 1083 (E.D. Cal. 2010); *see also Fonseca v. Sysco Food Servs. of Arizona, Inc*., 374 F.3d 840, 846 (9th Cir. 2004) ("Even the declarations that do contain hearsay are admissible for summary judgment purposes because they "could be presented in an admissible form at trial."  The Court agrees with SDCCU and will consider UFFCU's advertisements.

1   15 U.S.C. § 1120.   Thus, the Court GRANTS CEFCU's motion for summary judgment

2   concerning the false statement regarding "the right to use."

3          CEFCU also claims that SDCCU has no evidence to demonstrate Schneider's

4   subjective intent to deceive.  Given SDCCU's failure to offer admissible evidence of a

5   false representation as to the "right to use", this claim is moot.

6          Lastly, because Plaintiff has failed to show sufficient facts to support its claim

7   under 15 U.S.C. § 1120, the Court need not consider Defendant's final argument that

8   Plaintiff has not provided any admissible evidence of legally cognizable damages.

9   Accordingly, the Court GRANTS Defendant's motion for summary judgment the fifth

10  cause of action.

11  **D.     Plaintiff's Motion to Exclude Expert Testimony of Robert A. Taylor and**

12  **Theodore Davis Jr.**

13         Plaintiff filed a motion to exclude CEFCU's rebuttal expert testimony of Robert A.

14  Taylor addressing damages on the fifth cause of action.  (Dkt. No. 163.)  Plaintiff also

15  filed a motion to exclude CEFCU's rebuttal expert testimony of Theodore Davis Jr.

16  concerning the practice and procedure of trademark registration before the USPTO.  (Dkt.

17  No. 159.)  Because the Court grants summary judgment on the fifth cause of action, the

18  motions to exclude are moot.  (Dkt. No. 176 at 6 (CEFCU argued that "[a] grant of

19  CEFCU's pending motion for summary judgment (Dkt. 152) would render moot

20  SDCCU's motion to exclude Mr. Davis's expert testimony.").  Thus, the Court DENIES

21  SDCCU's motions to exclude the expert reports and testimony of Robert A. Taylor and

22  Theodore Davis Jr. as MOOT.

23                                    **Conclusion**

24         Based on the above, the Court GRANTS Defendant's motion for summary

25  judgment on the fifth cause of action for false and/or fraudulent registration of trademark

26  under 15 U.S.C. § 1120 and DENIES Plaintiff's motions to exclude the expert testimony

27

28

18cv967-GPC(MSB)

1  of Robert A. Taylor and Theodore Davis Jr. as MOOT.  The Court also overrules

2  CEFCU's objections to Ashlee Micale's declaration as MOOT.  (Dkt. No. 182.)

3        IT IS SO ORDERED.

4   Dated:    September 29, 2020

5                                    Hon. Gonzalo P. Curiel

6                                    United States District Judge

26